[Civ. No. 33706. First Dist., Div. Two. Sept. 11, 1974.]

In re T. M. R. et al., Minors.
FRANCES PORTER, as Division Chief, etc.,
Plaintiff and Respondent, v.
SANDRA R., Defendant and Appellant.

**COUNSEL**

Marjorie Gelb, Janice Cooper and Sally Laidlaw for Defendant and Appellant.

Charles C. Marson, Joseph Remcho and Alice Daniel as Amici Curiae on behalf of Defendant and Appellant.

Richard J. Moore, County Counsel, Charles L. Harrington and Paul M. Loya, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**ROUSE, J.**—Sandra R., the mother of two minor children, appeals from an order declaring them free from the custody and control of their parents and available for adoption.

Her appeal is taken upon an agreed statement; therefore, we shall discuss only those facts which are pertinent to the issues raised on appeal.

The trial court's findings and conclusions of law reveal that the order which is the subject of this appeal was based upon three grounds: (1) Sandra R. abandoned her children because she made only "token" attempts to communicate with them at all times after they were made dependents of the juvenile court; (2) Mrs. R. neglected her children for more than one year preceding the commencement of the instant action; and (3) since Mrs. R. had been convicted of possession of marijuana and had been sentenced to a term of up to five years, she could not provide her children with a normal home during this five-year period.

Defendant challenges each of the court's findings and contends that there is no valid basis for the order depriving her of custody and control over her children.

██ Mrs. R. first attacks the finding that she abandoned her children
 .

because she made only "token" attempts to communicate with them after they were made dependents of the juvenile court.

Subdivision (a) of section 232 of the Civil Code[1] provides, in part, that a minor may be declared free from the custody and control of a parent if he is a person "Who . . . has been left by both of his parents or his sole parent in the care and custody of another without any provision for his support,[2] or without communication from such parent or parents, for a period of six months with the intent on the part of such parent or parents to abandon such person. Such . . . failure to provide, or failure to communicate for a period of six months shall be presumptive evidence of the intent to abandon. . . . If in the opinion of the court the evidence indicates that such parent or parents have made only token efforts to support or communicate with the child, the court may declare the child abandoned . . . ."

In the instant case, the parties' agreed statement shows that there was uncontradicted evidence, consisting of the testimony of the children's foster mother, that at all times during the period when she had custody of defendant's two children (March 1970 until the date of trial) defendant wrote to the children and to the foster mother at least twice a month.

Sporadic efforts to communicate or communications which took place only when legal action was threatened may properly be found to be token only. Thus, in *Adoption of Oukes* (1971) 14 Cal.App.3d 459, 466-467 [92 Cal.Rptr. 390], a finding that the communications were merely token was upheld where the mother communicated with her children only three times during a period of one year and did so only because she was threatened with legal action.

In the case at bar, however, defendant communicated with her children on a frequent, regular and continuing basis, commencing such communications immediately after she was deprived of their custody and long prior to the commencement of the instant action. Since defendant was incarcerated during the period when she wrote to her children twice a month, it is obvious that she was utilizing the only means of communication available to her. Plaintiff concedes this to be the case. However, plaintiff makes some attempt to argue that since defendant's children were both so young

---

[1]All references herein to section 232 of the Civil Code are to the code section as it existed prior to the 1973 amendment.

[2]Defendant's failure to contribute to the support of her children is not here in issue, since it is undisputed that defendant was financially unable to do so at any time during the period in question. (*Moch* v. *Superior Court* (1919) 39 Cal.App. 471, 477 [179 P. 440].)

that they had not yet learned to read, they would not have been able to understand the significance of a written communication. It follows, according to plaintiff, that it would be reasonable to assume that defendant wrote to her children only for her own purposes, "such as the salving of her own conscience." Plaintiff also argues that it is of even greater significance that during the 12-day period from July 1 through July 12, 1972, when defendant was on parole, she did not attempt to communicate with her children.

Plaintiff's position is not persuasive. Here, the uncontradicted evidence shows that during the entire period when she was separated from her children due to her incarceration, defendant utilized the only means of communication available to her by writing to them twice a month. Although not contained in the agreed statement of facts, there is a representation in the record that her letters frequently contained pictures suitable for young children, and that she also sent them birthday and Christmas cards. The fact that defendant's children were themselves unable to read her letters is of no particular importance, since their foster mother was able to read the letters aloud to them. It seems equally certain that although of tender years, the children were able to appreciate the significance of their mother's continuing attempts to keep in touch with them and thereby express her affection for them.

To characterize defendant's continuing communications to her children as merely "token" would be to engage in pure surmise or speculation. As pointed out in *Shively* v. *Eureka Tellurium G. Min. Co.* (1907) 5 Cal. App. 236, 245-246 [89 P. 1073], "Surmise is not evidence and something more than suspicion is required as the basis for judicial action."

We find little significance in the fact that defendant did not contact her children during the 12-day period when she was on parole, since it is settled that acts of a temporary nature are not sufficient upon which to base a finding of abandonment. (*In re Salazar* (1962) 205 Cal.App.2d 102, 107 [22 Cal.Rptr. 770].) In that connection we note that Mrs. R. testified she had "walked away" from jail shortly after receiving the instant petition to have her children removed permanently; that she did not have an attorney at that time and was terrified that she would lose her children. Further, she testified that she never had any intent to abandon her children. She admitted that she had made no attempts to contact her children during the 12-day period when she was not incarcerated, although she had opportunities to do so. However, she stated that she intended to contact her children after she had a place of her own and had settled down.

Under the circumstances here present, we conclude that there is no evidentiary support for the trial court's finding that defendant abandoned her

children by failing to communicate with them after she was deprived of their custody.

■ We turn next to the trial court's finding that defendant neglected her children for more than one year preceding the commencement of the instant action. In view of the undisputed evidence that defendant was incarcerated during the one-year period immediately preceding the commencement of this action and nevertheless wrote to her children twice a month, it is difficult to identify any real basis for a finding of neglect. However, plaintiff reasons that the children themselves provided evidence of defendant's neglect, in that defendant's daughter had difficulty in using a knife and fork and defendant's son wet his bed and defecated in his pants on occasion and also stole money from his foster mother despite having been told not to do so. Plaintiff argues that the problems of defendant's children must be attributed to her neglect because "[b]y commission of crimes, [defendant] has not only assured her children of the deprivation of her emotional stimulus and outward love, but has guaranteed total deprivation of all necessary stimuli since she has caused her own absence from her children."

Subdivision (b) of section 232 of the Civil Code provides that a minor may be declared free from the custody and control of a parent if he is a person "Who has been cruelly treated or neglected by either or both of his parents, if such person has been a dependent child of the juvenile court, and such parent or parents deprived of his custody for the period of one year prior to the filing of a petition praying that he be declared free from the custody and control of such cruel or neglectful parent or parents."

It is evident that subdivision (b) was intended to apply only in a situation where a child was made a dependent of the juvenile court because he was cruelly treated or neglected by his parents. Obviously no such situation exists in the instant case, since defendant's children were made dependent children of the juvenile court under section 600, subdivision (a), of the Welfare and Institutions Code, simply because there was no one to care for them when their parents were arrested. The record contains no evidence of cruelty or neglect on the part of defendant before she was deprived of custody of her children. In fact, the record contains evidence that she was a good and loving mother who gave excellent attention and supervision to her children.

Even assuming that subdivision (b) is broader in application than its wording would appear to indicate, we cannot agree with plaintiff's suggestion that defendant's children became neglected children after defendant was incarcerated and unable to be with them in person. The question

of neglect, within the meaning of subdivision (b), is rebutted by leaving the child in an environment where he is known to be getting good care. (*Adoption of R.R.R.* (1971) 18 Cal.App.3d 973, 982 [96 Cal.Rptr. 308].) There is nothing in the record to suggest that defendant's children were not receiving entirely adequate care in the custody of their foster mother.

Finally, the evidence of bedwetting, stealing, and the inability to properly use a knife and fork, does not, as plaintiff contends, establish neglect on defendant's part or, indeed, on the part of anyone. Michelle Santos, an expert in the field of child behavior, testified that conduct of this nature was not particularly unusual among young children. Dr. Reiss, a child psychologist, gave testimony to the same effect and also stated that in his opinion, it was not possible to tell whether children had been neglected from the behavior patterns described by the foster mother. The foster mother testified that before the children were placed in her home they had spent between four to six weeks in a facility where they had lived in a dormitory, where their clothes and other belongings had been stolen from them on several occasions. She further testified that E. R., then three years old, was upset by this experience and that at the time she came to the foster home she was not well coordinated and had difficulty using a knife and fork. She testified that T. R., who was about five at the time he came to her home, was still afraid after his experiences at the facility that his belongings would be stolen and hid his shoes under the bed. When he first came to the foster home, T. would wet his bed at night and would defecate in his pants occasionally under stress. Further, T. would occasionally steal money from her purse even after she told him not to do so. The foster mother testified that all the above-described behavior decreased over time.

It is our opinion that the trial court's finding of neglect, like the finding of abandonment, finds no support in the evidence. It follows that such finding cannot be upheld.

We turn next to the court's finding that, because defendant had been convicted of possession of marijuana and had received a sentence of up to five years, she could not provide her children with a normal home during said five-year period.

Subdivision (d) of section 232 of the Civil Code provides that a minor may be declared free of the custody and control of a parent if the parent has been deprived of his civil rights due to the conviction of a felony "if any term of sentence of such parent . . . is of such length that the child will be deprived of a normal home for a period of years."

The record in the instant case shows that during the course of the trial,

defendant's counsel produced a letter from the California Institution for Women stating that defendant would probably be released in two months. Defendant's counsel argued that the court had a duty to look beyond the maximum term of defendant's sentence and consider the fact that she was about to be released.

Subsequently, at the hearing on the findings of fact and conclusions of law, defendant's counsel moved to reopen the case to present new evidence showing that defendant had been released from prison approximately three weeks before. Defendant's counsel indicated that she had received this information only five days before. The court refused to consider this evidence on grounds that the motion had not been properly noticed, the time for making a motion for new trial had expired and the court was of the opinion that its findings should be based solely upon evidence produced at the trial. In addition, the court denied the motion to reopen because it was of the opinion that the new evidence would not be controlling.

We believe that the court erred in concluding that the time for making a motion for new trial had expired, since such motion may be made at any time prior to the entry of judgment or within 15 days of the date of mailing notice of entry of judgment. (Code Civ. Proc., § 659.) In any event, defendant was not moving for a new trial, but was, instead, seeking to reopen the case to produce additional evidence. ■ It is settled that a trial court has discretion to permit the reopening of a case after the close of the evidence and the submission of the case for decision even though considerable time may have elapsed since the cause was submitted for decision. (*Stoumen* v. *Munro* (1963) 219 Cal.App.2d 302, 319 [33 Cal.Rptr. 305].) Also, denial of the motion on the ground that the court's rulings must be based only upon evidence produced at the trial is not valid since it is the rule that the trial is not complete until the findings are signed and filed. (*Stoumen* v. *Munro, supra,* at p. 319.)

■ The two remaining grounds upon which the trial court based its order denying the motion to reopen consisted of the lack of timely notice of the motion and the fact that the court did not deem the additional evidence to be controlling. The latter ground did not justify the denial of the motion to reopen. Since, as noted above, there was insufficient evidentiary support for the findings of abandonment and neglect, the only other basis for depriving defendant of custody and control over her children consisted of the fact that she might be incarcerated for a period of years. Thus, the evidence that she had been released was of crucial significance to the outcome of the case.

The question remaining, then, is whether the trial court was entitled to deny the motion to reopen on the ground that defendant's counsel had

failed to give timely notice of the motion. In answering this question, we note that defendant's counsel only learned of defendant's release five days prior to the date on which she made her motion, in open court, to reopen the case and produce the additional evidence. We note, also, that plaintiff has not made any claim, either in the lower court or on appeal, that she was prejudiced by the lack of timely notice of the motion to reopen. The possibility of defendant's impending release from prison had been raised at the trial, thus plaintiff could not claim surprise when such release actually occurred. If plaintiff felt the need of a continuance in order to prepare to meet the new evidence, she could have requested one. In any event, it is evident that if defendant was no longer incarcerated and was in a position to provide a normal home for her children, she could not be deprived of their custody under subdivision (d) of section 232 of the Civil Code.

In view of the crucial significance of the additional evidence sought to be produced by defendant, we conclude that the trial court abused its discretion in denying the motion to reopen.

■ The relationship of a natural parent to her children is a vital human relationship which has far-reaching implications for the growth and development of the child. (See Kay & Phillips, *Poverty and the Law of Child Custody* (1966) 54 Cal.L.Rev. 717.) Thus the involuntary termination of that relationship by state action must be viewed as a drastic remedy which should be resorted to only in extreme cases of neglect or abandonment. We find that the evidence presented to the trial court in this instance fails to demonstrate a compelling need for such action since it is considerably less than substantial in its support of the allegations made against Mrs. R. Also, lest it be thought that we do not share the trial court's concern regarding the circumstances which gave rise to this problem in the first place, we hasten to point out that there is at least one less severe alternative available whereby the trial court can satisfy itself as to the ability of Mrs. R. to resume her parental relationship with her children before permitting her to do so. [3]

Finally, we direct the trial court's attention to the recent mandate of the California Supreme Court as set forth in the case of *In re B. G.* (1974)

---

[3]Notwithstanding the fact that these proceedings involve the technical question of abandonment and neglect, it appears to us, from the somewhat sparse record in the case, that the real concern here is one of fitness of the mother to have custody of her children. If this be so then continuing them in their present status as court wards would not seem an unreasonable alternative, especially since it appears (or so we were informed at oral argument) that there are no immediate prospects for the adoption of either of these children. Also, adoption at their ages might well necessitate separation from each other—a traumatic experience for any child.

11 Cal.3d 679 [114 Cal.Rptr. 444, 523 P.2d 244], where it was held that an award of custody to a nonparent on the basis of the parent's unfitness to care for the child must be supported by an express finding that parental custody will be detrimental to the child (p. 695) and that finding must be supported by evidence showing that parental custody would actually harm the child (p. 699). That case is similar to the present action in that there a mother was denied custody of her minor children even though there was no express finding by the court that she was an "unfit" parent. Unlike the instant action, however, *In re B. G.* was concerned with juvenile court wardship proceedings under the dependency provisions of section 600 et seq., of the Welfare and Institutions Code. Our Supreme Court held that such proceedings were governed by the provisions of section 4600[4] of the Civil Code. Pointing out that in California there are at least eight different proceedings in which custody questions can be litigated (including proceedings to terminate parental control under Civ. Code; §§ 232-238; see Bodenheimer, *The Multiplicity of Child Custody Proceedings—Problems of California Law* (1971) 23 Stan.L.Rev. 703, 704-705), the court concluded that a uniform rule was desirable and that "the Legislature's specification that section 4600 applies to 'any proceeding where there is at issue the custody of a minor child' demonstrates that section 4600 was enacted to fulfill that objective" (p. 696).

We find that, although the within proceedings did not involve an award of custody based upon Mrs. R's "unfitness" as a parent, they did involve the issue of custody of minor children. Accordingly, we conclude that any further proceedings in this case must necessarily conform to the requirements of section 4600 of the Civil Code in the manner outlined by the Supreme Court in *In re B. G., supra.*

In view of our determination, we deem it unnecessary to consider the

---

[4]Insofar as pertinent, that section provides as follows: "In any proceeding where there is at issue the custody of a minor child, the court may, during the pendency of the proceeding or at any time thereafter, make such order for the custody of such child during his minority as may seem necessary or proper. If a child is of sufficient age and capacity to reason so as to form an intelligent preference as to custody, the court shall consider and give due weight to his wishes in making an award of custody or modification thereof. Custody should be awarded in the following order of preference: (a) To either parent according to the best interests of the child. (b) To the person or persons in whose home the child has been living in a wholesome and stable environment. (c) To any other person or persons deemed by the court to be suitable and able to provide adequate and proper care and guidance for the child.

"Before the court makes any order awarding custody to a person or persons other than a parent, without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interests of the child."

constitutional questions which have been raised by defendant and amicus curiae.

The order declaring defendant's children free from her custody and control is reversed, with directions to the trial court to reconsider its decision in the light of the views expressed herein.

Taylor, P. J., and Kane, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 8, 1974.