[L.A. No. 30774. May 30, 1978.]

In re RICHARD E., a Minor.
LOS ANGELES COUNTY DEPARTMENT OF ADOPTIONS,
Plaintiff and Respondent, v.
ROBERT E., Defendant and Appellant.

**COUNSEL**

Richard J. Stall, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

John H. Larson, County Counsel, Lester J. Tolnai and Sterling R. Honea, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**CLARK, J.**—Robert E. appeals from judgment declaring that custody and control of his minor son, Richard, should be removed from the minor's parents and placed in plaintiff Los Angeles County Department of Adoptions (County). (See Civ. Code, § 232, subd. (a)(4).)[1] We affirm the judgment.

County seeks to free Richard from custody and control of his parents on grounds (1) the minor, seven and one-half years of age when the petition was filed, had been almost since birth provided for by public

---

[1]The record on appeal fails to disclose that judgment was entered herein, but examination of the trial court record pursuant to California Rules of Court, rule 12(a), demonstrates judgment was entered on 18 September 1975. Robert E. has a right to appeal from that judgment. (Code Civ. Proc., §§ 902, 904.1.)

agencies, without support or communication from parents who intended to abandon him, and (2) the father had been convicted of a felony which not only made him unfit to have custody of the minor but also required his confinement for such length of time as to deprive the minor of a normal home life.[2] Only the father (Robert) seeks relief from the judgment based as to him on the finding that "no reasonable possibility" existed "that the father would be released from prison soon enough to embark upon a meaningful parental relationship." (Civ. Code, § 232, subd. (a)(4).)

The mother, whose whereabouts are unknown but who was served by publication, has not appeared in these proceedings. The court found that she intended to abandon the minor (Civ. Code, § 232, subd. (a)(1)), and granted the petition as to her also.

Robert was born in Missouri in 1939. He has, in addition to Richard, other sons aged 16, 15 and 13 years at the time the petition was filed. They reside in foster homes. Speaking of his relationship with his children he states: "I happen to be that 'one in a million type of natural father' that I love my sons to the extent that I will effect any means or actions at my disposal for the betterment of their welfare regardless of the consequences to myself personally."

Robert has not chosen the most laudable means to better the welfare of his children. In June 1967 he was convicted of armed bank robbery and sentenced to 20 years confinement in a federal prison. While on parole in 1968, he was arrested and convicted of second degree burglary. In August 1974, again on parole, he was arrested for bank robbery, and in November 1974 he was sentenced in federal court upon multiple convictions to a term of at least 25 years.

Richard was born in September 1967 while appellant was in prison following first conviction. Since placed in a foster home when three years old, Richard has never seen his mother or father with the exception of three visits by Robert in the spring of 1974. Neither parent has

---

[2]At the time the petition was filed, Civil Code section 232, subdivision (a), read in pertinent part: "An action may be brought for the purpose of having any person under the age of 18 years declared free from the custody and control of either or both of his parents when such person comes within any of the following descriptions: . . . (4) Whose parent [is] convicted of a felony, if the felony of which such parent [was] convicted is of such nature as to prove the unfitness of such parent . . . to have future custody and control of the child, or if any term of sentence of such parent . . . is of such length that the child will be deprived of a normal home for a period of years." (Note: The underscored portion of the statute was deleted by 1976 amendment (Stats. 1976, ch. 940, § 2).)

contributed to his support. Robert, who was represented by appointed counsel at hearing on the petition, contends the judgment must be reversed because the court failed to also appoint counsel for Richard, citing *In re Dunlap* (1976) 62 Cal.App.3d 428 [133 Cal.Rptr. 310].

*Dunlap* involved a custody and control proceeding for the 14th child of Juanita Dunlap, a 43-year-old widow. At the time of birth Juanita refused to reveal the name of the baby's father and voluntarily relinquished the child to a foster home because she had then "about nine" children living at home, was under a strain, and feared the baby would not be accepted by the other children. When the child was three years of age Juanita sought to remove her from the foster parents. They petitioned pursuant to Civil Code section 232 to free the child from Juanita's care and custody. A probation report (see Civ. Code, § 233) made a strong recommendation in favor of the foster parents as being in the best interest of the child. For unexplained reasons the report was not received in evidence.

The *Dunlap* trial court found on conflicting evidence Juanita had never intended to abandon the baby and ordered she be delivered to Juanita "forthwith." In reversing, the Court of Appeal expressed concern that neither the petitioner nor a parent had advocated a position necessarily based in any part on the minor's best interests. Noting the probation report had not been received in evidence, the court concluded the minor's interests had not been adequately protected, holding there to be reversible error in the failure to appoint independent counsel for the minor pursuant to Civil Code section 237.5.

Civil Code section 237.5 provides procedures for hearing on a petition to free a child from parental custody and control. It states the judge "shall" read the petition to the child's parents, if they are present; the judge "shall" explain any term or allegation contained in the petition, the nature of the proceeding, its procedures, and possible consequences, upon request by the minor or either parent; the judge "shall" ascertain whether the minor and parents have been advised of the right to be represented by counsel, and advise them of such if they were unaware; the judge "shall" appoint counsel to represent each parent who appears and is unable to afford counsel; and the judge "*may*" appoint an attorney to represent the minor whether or not he is able to afford counsel.

When the Legislature has, as here, used both "shall" and "may" in close proximity in a particular context, we may fairly infer the Legislature intended mandatory and discretionary meanings, respective-

ly. The ordinary import of "may" is a grant of discretion. (*Housing Authority* v. *Superior Court* (1941) 18 Cal.2d 336, 337 [115 P.2d 468].) An exercise of such discretion will not be disturbed on review unless abused. (6 Witkin, Cal. Procedure (2d ed. 1971) p. 4234.) Even failure to state reasons for a discretionary decision does not constitute, by itself, abuse of discretion. (*People* v. *Edwards* (1976) 18 Cal.3d 796, 799 [135 Cal.Rptr. 411, 557 P.2d 995].) ▆ Further, to be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice. (*Brown* v. *Newby* (1940) 39 Cal.App.2d 615, 618 [103 P.2d 1018].)

▆ A proceeding to free a child from parental custody and control is essentially accusatory in nature, directed to challenges against the parent—not against the child. (*In re Rodriguez* (1973) 34 Cal.App.3d 510, 514 [110 Cal.Rptr. 56].) The petitioner must establish that a parent is guilty of abandoning, cruelly treating or neglecting the child; or is addicted, morally depraved; or is a convicted felon, is mentally deficient, or is otherwise incapable of caring for the child. (Civ. Code, § 232.) Thus, the issue at a hearing is whether a parent is fit to raise the child. To that end are directed all the arguments of opposing parties, parents claiming they are fit and petitioners claiming otherwise, and with each side generally contending it is protecting the best interests of the child. It is thus likely that in a particular case the court will be fully advised of matters affecting the minor's best interests, and little assistance may be expected from independent counsel for the minor in furtherance of his client's or the court's interests. However, when the court finds a child has separate interests not protected in the contest between parents and a petitioner, the court must exercise its discretion by appointing separate counsel.

In confronting the particular circumstances in *Dunlap* the court concluded the minor's interests were prejudiced because she had not been represented. It was recognized that while the court possesses broad discretion in the matter (*In re Dunlap, supra,* 62 Cal.App.3d 428, 438), appointment of counsel is nevertheless required in the absence of an affirmative showing the minor's interests would otherwise be protected. (*Id.*)

Thus, in absence of a showing on the issue of the need for independent counsel for a minor, failure to appoint constitutes error. However, this is not to say a court must always exercise its discretion in favor of appointing counsel. The court possesses broad discretion in determining

need for counsel, and exercise of discretion will not be disturbed on appeal except for manifest abuse. But here no showing on the issue of need for counsel was made, and thus no basis upon which the court could exercise its discretion not to appoint counsel existed. Failure to appoint counsel in such circumstances is error. (*In re Dunlap, supra,* 62 Cal.App.3d 428, 438.) The rule we adopt of course requires counsel be appointed at the commencement of proceedings absent an immediate showing upon which the court can exercise its discretion against making an appointment.

■ Failure to appoint counsel in the context of a freedom from parental custody and control proceeding is dissimilar to denial of the fundamental right to counsel where one is charged with crime or juvenile misconduct. (See *In re Robinson* (1970) 8 Cal.App.3d 783, 786 [87 Cal.Rptr. 678].) None of the personal deprivations flowing from denial of counsel in juvenile court proceedings are present here. (See *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068]; *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428].) Accordingly, failure to appoint counsel for a minor in a freedom from parental custody and control proceeding does not require reversal of the judgment in the absence of miscarriage of justice. (See *Brown* v. *Newby, supra,* 39 Cal.App.2d 615, 618.)

There is nothing in the record of the instant proceeding suggesting the minor was prejudiced because he was not represented by independent counsel. The court concluded on substantial evidence in accordance with the probation report that awarding custody to either parent would be detrimental to Richard. On the other hand, Robert was afforded full opportunity to demonstrate that his continuing custody of Richard would be in Richard's best interests. He testified, conceding his criminal violations but expressing his love and devotion for Richard. Each of his other sons—all living in foster homes for several years—also testified in a manner very favorable to Robert.[3]

The record discloses and Robert suggests nothing which independent counsel for the minor might have done to better protect Richard's interests. The court made its judgment with full knowledge of family relationships affecting Robert and Richard, noting particularly the very

[3]The trial court commented on Robert's sons as follows: "I don't think I have ever experienced three minors of age thirteen, fifteen and sixteen that were such outstanding witnesses, such intelligent persons. Not only did they indicate their deep devotion to their father, but they are very bright . . . I am sorry to say that half of the attorneys that come into this courtroom cannot communicate as well as these three children can."

favorable manner in which Robert's other children had developed notwithstanding his long absence from the family. It thus appears the court had before it all factual matters which may have persuaded it that Richard's interests would be best served by not depriving Robert of custody.[4] In such circumstances, no miscarriage of justice resulted from the court's failure to exercise its discretion to appoint counsel for Richard.[5]

■ Robert further complains the trial court failed to make findings required by Civil Code section 4600.[6] (See *In re B. G.* (1974) 11 Cal.3d 679 [114 Cal.Rptr. 444, 523 P.2d 244].) Robert did not request the court make findings of fact (see Code Civ. Proc., § 632), and the court made no express finding or conclusion. However, after all evidence had been received the court stated: "The court does not have to conclude that [Robert] is going to be in jail for thirty-five years or even twenty-five years. [The aggregate length of multiple federal terms imposed on Robert is in dispute.] The only thing that the court has got to consider is whether there is any reasonable probability that he will be released at some time soon enough to embark upon a meaningful parental position in respect to Richard, *and that probability is totally nonexistent, it really is.*" (Italics added.) While the court's statement does not comply with the literal requirements of Civil Code section 4600 (see *In re B. G., supra,* 11 Cal.3d 679, 698-699), in rendering its judgment the court further recited: ". . . the court having found that an award of custody of [Richard E.], minor, to said citees, or either of them, would be detrimental to said minor and that an award of custody to a non-parent is required to serve the best interests and welfare of said minor . . . ."

We deem the court's statements to constitute a finding that, by reason of Robert's incarceration, he is unfit to provide future custody and control

---

[4] We do not imply that the favorable impression created by Robert's older children was necessarily a factor to be weighed in favor of continuing Robert's custody of Richard. After all, the older children were all in large part the products of the foster home program.

[5] In *Dunlap, supra,* 62 Cal.App.3d 428, the court reversed judgment without expressly considering the question of a miscarriage of justice. To the extent that *Dunlap* suggests a per se rule that reversal automatically follows from failure of the trial court to exercise its discretion, it is disapproved. However, there are circumstances in that case, primarily the failure to place in evidence the probation report, suggesting failure to appoint independent counsel for the minor may have resulted in a miscarriage of justice.

[6] Section 4600 provides in pertinent part: "In any proceeding where there is at issue the custody of a minor child . . . . [¶] Before the court makes any order awarding custody to a person or persons other than a parent . . . it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interests of the child. . . ."

of Richard, and Richard would be deprived of a normal home for a period of years, within the meaning of Civil Code section 232, subdivision (a)(4). The court's statements otherwise constitute compliance with Civil Code section 4600. That section does not specify any particular form for findings. (See *Hopkins* v. *Warner* (1895) 109 Cal. 133, 139 [41 P. 868]; *Guardianship of Sharp* (1940) 41 Cal.App.2d 79, 84 [106 P.2d 244].)

The judgment is affirmed.

Mosk, J., Richardson, J., and Manuel, J., concurred.

**BIRD, C. J.**—I respectfully dissent.

In the realm of human relationships few are more fundamental than that between father and son. Today, this court is upholding the legitimacy of a proceeding in which this unique relationship was irrevocably severed despite the fact that the trial court failed to appoint counsel for the son, failed to ascertain his wishes, and based its decision on grounds that have subsequently been held to be insufficient by the Legislature. I cannot sanction such a result.

The termination of parental custody and control is a drastic measure which results in (1) severing all legal relationships between parent and child; (2) appointing a legal guardian in place of the parent; (3) placing the child for adoption; (4) cutting off all communication and contact between parent and child; and (5) imposing a binding, unmodifiable order on both parent and child. Despite these irrevocable consequences, the majority conclude that the error committed in the trial proceeding was harmless. I simply cannot join such reasoning.

I

The facts of this case are unusual. The father, appellant, has maintained strong relationships with at least three of his sons,[1] and had actively attempted to reunite his family prior to his arrest in August 1974 for bank robbery. At the trial proceeding, his three older sons testified and indicated their strong desire to maintain the family unit to the extent this was possible. There was conflicting testimony regarding the extent of

[1] Only Richard's status was at issue in the hearing. The county department of adoptions did not seek to free the three older sons from their father's custody and control.

contact between appellant and his son, Richard. The three sons and the father testified to several visits at which Richard was present. While he was incarcerated, appellant had also regularly corresponded with Richard.

Richard was not present at the hearing. Moreover, two months before the hearing he was apparently moved from the foster home where he had resided since 1969. His brothers were unable to contact him. It further appeared from remarks by the court that the Los Angeles County Department of Adoptions had prevented appellant from seeing Richard after his arrest in August 1974. Appellant's attorney was not able to interview Richard prior to the hearing.

The Los Angeles County Department of Adoptions, who petitioned pursuant to Civil Code section 232 et seq. to terminate appellant's parental rights, presented as evidence only the minor's birth certificate, the judgment of appellant's conviction and sentence, and a five-page probation report. The preparer of the probation report had not interviewed either Richard or his father, but apparently compiled the report from the files of various county agencies and the federal Bureau of Prisons. The report contained no social study, no psychological evaluation of Richard, nor any prognosis for his development under alternate dispositions. (Compare *In re Marcos S.* (1977) 73 Cal.App.3d 768, 775 [140 Cal.Rptr. 912].) It contained a short summary of the minor's history and his parents' contacts with him, and it concluded, "The minor has made a good adjustment in his present foster home where he has responded to the security, love and warmth of the foster parents." As of the date of the hearing, however, he had apparently been removed from that home. There was conflicting evidence whether the foster parents wished to adopt Richard or whether termination would result in a change of placement. The record is otherwise devoid of any psychological data on Richard, of any evidence of his feelings about his father, or his possible preferences regarding his future. Richard was two weeks short of eight years old at the time of the hearing.

Several months before the hearing, appellant petitioned the court for appointment of an attorney for himself and for his son. The court's minute order of May 21, 1975, ordered counsel appointed for appellant, but no reference was made to counsel for the minor.

Although the court found that appellant had not intended to abandon Richard (Civ. Code, § 232, subd. (a)(1)), it held that the term to which

appellant had been sentenced would render it improbable that he could establish a meaningful parental relationship with Richard. (Civ. Code, § 232, subd. (a)(4).) This appeal followed. During the pendency of this appeal, the Legislature deleted as a ground for termination of parental rights the length of a parent's confinement. (Civ. Code, § 232, subd. (a)(4).)

## II

Civil Code section 232 et seq. provide a procedure for removing a minor child from the custody and control of the natural parents, thereby freeing the child for adoption. As the majority point out, a section 232 proceeding is in large part accusatory in nature, directed at establishing that the natural parent is, for one of the reasons enumerated in that statute, incapable of caring for the child. Because of the "drastic remedy" of complete severance of the parent-child bond (*In re T. M. R.* (1974) 41 Cal.App.3d 694, 703 [116 Cal.Rptr. 292]), the Legislature has provided procedural safeguards in section 232 proceedings, including the right to appointed counsel for indigent parents. (Civ. Code, § 237.5.)

The thrust of section 232 proceedings, however, is to provide for the welfare of the child, not to punish the parents. (Civ. Code, § 232.5.) Thus, Civil Code section 237.5 also provides for court-appointed counsel for the minor. The Court of Appeal in *In re Dunlap* (1976) 62 Cal.App.3d 428, 438 [133 Cal.Rptr. 310], concluded that the statutory scheme providing for termination of parental rights, when viewed as a whole, indicated a legislative intent that counsel be appointed for the minor unless the circumstances indicate that the child's interests would be otherwise protected. Noting that in the adversary setting of a section 232 proceeding it is often difficult for the interests of a child to be clearly and impartially articulated, the court stated: "The Legislature's recognition of the rights of personality of the child as the touchstone of proceedings to free him from parental custody and control is evidenced by its mandate in Civil Code section 232.5 that the statutory scheme 'be liberally construed to serve and protect the interests and welfare of the child.' The Legislature's recognition of the importance of the proceedings to the child is shown by its enactment of Civil Code section 238 providing that the results of the action are conclusively binding upon the child. The Legislature's recognition of the significance of counsel to the protection of the child is disclosed by the reference in Civil Code section 237.5 to the child's 'right' to counsel.

"Liberal construction of Civil Code section 232 et seq. to serve and protect the interests and welfare of the child requires that the burden of persuasion with respect to the trial court's determination to appoint or deny the child independent counsel be placed upon justifying the decision to deny counsel. Unless the burden is allocated in that fashion, *there may well be no one involved, except in an adversary position, in the proceedings to assert the right of a child too young to assert it for himself.* If the right is not asserted, the child's right of personality, recognized as the primary consideration of the process, may be determined without the protection of counsel uninfluenced by his advocate's duty to another party." (*Id.,* at p. 439, italics added.)

The majority opinion correctly analyzes *Dunlap* as holding that "appointment of counsel is nevertheless required in the absence of an affirmative showing the minor's interests would otherwise be protected." (Maj. opn., *ante,* at p. 354.) The majority then conclude that it was error under these circumstances not to appoint counsel for Richard. (Maj. opn., *ante,* at p. 355.) However, it goes on to hold that failure to appoint counsel for Richard is not reversible per se. The majority conclude that no prejudicial error occurred in this case because (1) appellant was afforded a full opportunity to persuade the trial court that continuation of his parental rights was in Richard's best interest, and (2) there was nothing further that independent counsel could have done to protect Richard's interests.

However, the fact that *appellant* was given the opportunity to present his case does not address the fact that *Richard's* interests were not protected. The majority ignore the careful analysis in *Dunlap* of both the legislative intent behind section 237.5 and the practical difficulties in ascertaining a child's separate interests.[2] The *Dunlap* court recognized the importance of the proceedings to the child, and the danger in relying on the adversary process to ascertain a child's separate interests. To protect the child, the court placed the burden of proof "upon [the one] justifying the decision to deny counsel." (*In re Dunlap, supra,* 62 Cal.App.3d 428, 439.) Thus, the *Dunlap* court implicitly recognized that it cannot be presumed that adverse parties in a custody proceeding will fully and adequately advise the court regarding the minor's best interests.[3]

---

[2] Respondent stated at oral argument that it is the duty of the probation officer to conduct an investigation and articulate the interests of the child. (Civ. Code, § 233.) This case illustrates the inadequacy of that argument. (See also *In re Dunlap, supra,* 62 Cal.App.3d 428, 440, fn. 3.)

[3] The problem may be especially difficult where, as here, the child is not present in court. Civil Code section 234 states that the child must be present if over the age of 12. If

Further, the majority have ignored the state of the record in this case. The trial court was impressed with the quality of testimony from Richard's three older brothers, the regard they had for their father and their interest in keeping the family together. The court was troubled by the prospect of separating the family. Yet the court had no evidence regarding Richard's attachment to his brothers or father when it made its decision. Absent any psychological information regarding Richard, the trial court was forced to speculate that "maybe Richard is not as strong as his brothers." In this highly unusual case, this court can only speculate as to what counsel for Richard might have contributed. At the minimum, appointed counsel could have interviewed Richard and ascertained his feelings toward his brothers and his father and discussed his future. This information could have been conveyed to the court. Finally, counsel could have supplemented the sketchy probation report.[4]

It is possible that Richard had not formed any strong attachment to his father. However, it is also possible that he or his appointed counsel might have presented testimony favorable to maintaining his relationship to his father. The failure to appoint counsel is presumptively error, as the majority recognize. On the basis of this record, how can this court speculate and conclude that failure to appoint counsel was not prejudicial to Richard or to his father?

### III

The failure to appoint counsel for Richard was compounded by the failure to comply with Civil Code section 4600. This court held in *In re B. G.* (1974) 11 Cal.3d 679, 696 [114 Cal.Rptr. 444, 523 P.2d 244], that Civil Code section 4600 applies in any proceeding in which child custody is an issue. That section states, "If a child is of sufficient age and capacity to reason so as to form an intelligent preference as to custody, the court *shall* consider and give due weight to *his wishes* in making an award of custody or modification thereof." (Italics added.) That section further requires that an award of custody to a nonparent may only be made following a finding that "an award of custody to a parent would be detrimental to the

under 12, however, the child is to be present only "upon order of the court after necessity being shown." The record does not show that anyone requested Richard's presence in court.

[4]On the desirability of appointing counsel for children in adoption-related proceedings and the role such counsel might play, see Bodenheimer, *New Trends and Requirements in Adoption Law and Proposals for Legislative Change* (1975) 49 So.Cal.L.Rev. 10, 98-102, and sources cited therein.

child and the award to a nonparent is required to serve the best interests of the child."

Section 4600 has been held applicable in section 232 proceedings (*In re T. M. R., supra,* 41 Cal.App.3d 694, 704; see *In re Rose G.* (1976) 57 Cal.App.3d 406, 417 [129 Cal.Rptr. 736]), and the majority appear to hold it is applicable here. (Maj. opn., *ante,* at pp. 356-357.) Indeed, the trial judge in the instant case was aware of its applicability. Section 4600 does not require that the wishes of a child of tender years be automatically adopted. What it does require is that in a decision as important as permanent custody, the personality of the individual child be taken into account with his wishes *ascertained if possible.* (See generally, Wald, *State Intervention on Behalf of "Neglected" Children: Standards for Removal of Children from Their Homes, Monitoring the Status of Children in Foster Care, and Termination of Parental Rights* (1976) 28 Stan.L.Rev: 623, 696-697.) This evidence may then be accorded "due weight" along with the other evidence adduced at the hearing. In the present case, nothing in the record indicates that *anyone* ever attempted to interview Richard prior to the proceedings to ascertain his wishes in this matter.

This court need not determine at what age a minor's wishes must be ascertained. But if there is no information at all in the record regarding the personality or possible preferences of a child of nearly eight years, the court has failed to comply with section 4600. Further, without this information, it was impossible for the trial court to ascertain whether termination was necessarily in *Richard's* best interests or whether it could prove detrimental *to him.* In view of the testimony of his brothers, such evidence would have been critical.

Furthermore, in a proceeding to terminate parental rights, section 4600 requires a finding that custody in a parent would be detrimental to the child and custody in a nonparent would be necessary to further the child's best interests. (*In re T. M. R., supra,* 41 Cal.App.3d 694, 703-704.) This court in *In re B. G., supra,* 11 Cal.3d 679, 698-699, stated: "[W]e conclude that section 4600 permits the . . . court to award custody to a nonparent against the claim of a parent only upon a clear showing that such award is essential to avert harm to the child. A finding that such an award will promote the 'best interests' or the 'welfare' of the child will not suffice." In the present case the trial judge failed to make the required finding.

The majority deem this omission corrected by the court's statement and subsequent order. (Maj. opn., *ante,* at p. 356.) The order was prepared by

counsel for the county department of adoptions. It does not contain specific findings based on the evidence in this case, but merely recites the language of section 4600. As the court noted in *In re Rose G., supra,* 57 Cal.App.3d 406, 416, basic fairness, as well as adequate appellate review, requires written findings at trial. (See also *In re John H., ante,* pp. 18, 34-36 [145 Cal.Rptr. 357, 577 P.2d 177], dis. opn., by Bird, C. J.) In custody proceedings involving minor children, it is inappropriate for an appellate court to imply a missing finding even if supported by evidence in the trial record. (*In re Rose G., supra,* 57 Cal.App.3d 406, 417.)

## IV

Finally, it should be noted that the trial court specifically found in appellant's favor on the issue of abandonment. The court based its adverse finding solely on the length of appellant's prison term and the fact that it would preclude the establishment of a normal parental relationship. The trial judge stated, "The *only* thing that the court has got to consider is whether there is any reasonable probability that he will be released at some time soon enough to embark on a meaningful parental position in respect to Richard . . . ." (Italics added.) No evidence was received regarding the circumstances of the crime except appellant's statement that he took part in a bank robbery to obtain money to move his family to Florida. The court did not attempt to ascertain the probable length of appellant's prison term.[5] (Cf. *In re T. M. R., supra,* 41 Cal.App.3d 694, 701-702.)

During the pendency of this appeal, the Legislature expressly deleted the length of a parent's confinement as a ground for termination of parental rights. (Stats. 1976, ch. 940, § 2, p. 2152.)

This court has held that repeal of a criminal statute without a saving clause requires abatement of pending proceedings against one charged under the former statute. (*People* v. *Rossi* (1976) 18 Cal.3d 295, 304 [134 Cal.Rptr. 64, 555 P.2d 1313].) Whether the statute at issue here is sufficiently analogous to a criminal statute to require similar treatment need not be decided, since the issue was neither raised nor argued by the

---

[5]Appellant stated that he had been sentenced under 18 United States Code section 4208(a)(2) (now § 4205(b)(2)). If so, he would be eligible for parole at any time at the discretion of the federal Parole Commission. Because he had not yet been permanently located within the prison system, no case worker was available to testify on this point.

parties. In view of the other errors in this case, however, this court should hesitate to uphold an order terminating parental rights based solely on a ground which the Legislature no longer deems sufficient. I would reverse.

Tobriner, J., and Newman, J., concurred.

Appellant's petition for a rehearing was denied June 29, 1978. Bird, C. J., and Tobriner, J. were of the opinion that the petition should be granted.