[Civ. No. 42644. First Dist., Div. One. Dec. 27, 1978.]

In re HEIDI T. et al., Minors.
DEPARTMENT OF SOCIAL SERVICES OF THE COUNTY OF SANTA CLARA, Petitioner and Respondent, v.
CAROL T., Objector and Appellant.

866

**COUNSEL**

Nordin F. Blacker for Objector and Appellant.

Selby Brown, Jr., County Counsel, Jeffrey L. Bryson and Ann Miller Ravel, Deputy County Counsel, for Petitioner and Respondent.

**OPINION** ·

**RACANELLI, P. J.**—Preliminary to formal adoption proceedings, the Department of Social Services of the County of Santa Clara (hereafter Department) instituted proceedings pursuant to the provisions of Civil Code section 232[1] to declare the minor wards of the court, Heidi and Ralph (now age 12 and 11, respectively), free of parental custody and control. The trial court found that as a result of the neglect and mental disability of appellant (hereafter Carol), the natural mother, it would be detrimental to return their custody to Carol and rendered judgment freeing the minors from her custody and control and referring them to the

---

[1]That section provides in relevant part as follows: "(a) An action may be brought for the purpose of having any person under the age of 18 years declared free from the custody and control of either or both of his parents when such person comes within any of the following descriptions: . . . (2) Who has been cruelly treated or neglected by either or both of his parents, if such person has been a dependent child of the juvenile court, and such parent or parents deprived of his custody for the period of one year prior to the filing of a petition praying that he be declared free from the custody and control of such cruel

Department for adoptive placement.[2] On appeal, Carol challenges the validity of that judgment on several grounds. Our examination of the record, in light of governing principles, discloses no prejudicial error as claimed. We affirm the judgment.

*Facts*

The record reveals an unfortunate history of economic deprivation and social maladjustment ultimately resulting in Carol's decision to relinquish physical custody of the two minor children to a county juvenile agency; in December 1967, the minors were adjudicated dependent children of the court and placed in a foster home with the proposed adoptive parents where they have remained ever since. The impoverished circumstances of the family, compounded by the desertion of the natural father (now deceased), presented substantial obstacles for Carol in her efforts to adequately raise and provide for her family of five children. Shortly after the birth of Ralph, Carol began to manifest symptoms of emotional and mental instability resulting in several hospital confinements and a continuing need for medical treatment. On many occasions, she was observed to be in a dazed and unresponsive condition oblivious to the reality of her surrounding circumstances. Psychiatric evidence disclosed Carol suffered from a chronic mental illness, manifested by a detached reality and likely to become exacerbated when confronted with the normal stresses associated with the rearing of young children. While Carol's condition has shown improvement in recent years, two of the examining psychiatrists believed that Carol is and will remain incapable of adequately performing the role of parent; a third psychiatrist (called by Carol), while unable to evaluate Carol's present ability to provide parental care and control, stated his reluctance to disturb the children's present living situation.

---

or neglectful parent or parents. . . . (6) Whose parent or parents are, and will remain incapable of supporting or controlling the child in a proper manner because of mental deficiency or mental illness, if there is testimony to this effect from two physicians and surgeons each of which must have been certified either by the American Board of Psychiatry and Neurology or under Section 6750 of the Welfare and Institutions Code. . . ."

[2] A third ground alleged in the petition under subdivision (a)(7) (two-year foster home placement coupled with findings of detriment and failure to provide suitable care and a stable parental relationship) was not sustained by the required proof beyond a reasonable doubt.

## I.

### *Standard of Proof*

Initially, we meet the issue presented by Carol as to the proper standard of proof to be applied in section 232 emancipation proceedings. Focusing on the grave nature of the personal interests at stake, Carol contends—as she did below—that due process considerations and the far-reaching consequences generated by the instant termination proceedings demand that proof be made beyond a reasonable doubt or, at least, by clear and convincing evidence. While no relevant precedents are cited for the former proposition,[3] the latter proposal finds nearly uniform support in a number of cases. (See *In re Cynthia K.* (1977) 75 Cal.App.3d 81, 85-86 [141 Cal.Rptr. 875]; *In re George G.* (1977) 68 Cal.App.3d 146, 165, fn. 14 [137 Cal.Rptr. 201]; see also *In re Robert P.* (1976) 61 Cal.App.3d 310, 318 [132 Cal.Rptr. 5] [hg. den. 10/28/76] [dependency proceedings]; *Alsager* v. *District Court of Polk Cty., Iowa* (S.D.Iowa 1975) 406 F.Supp. 10; cf. *In re Rose G.* (1976) 57 Cal.App.3d 406, 420 [129 Cal.Rptr. 338] [hg. den. 7/1/76] [proof by preponderance of the evidence].)[4]

■ In light of the more serious consequences flowing from a permanent severance of the parental relationship (*In re Jacqueline H.* (1978) 21 Cal.3d 170, 175 [145 Cal.Rptr. 548, 577 P.2d 683]) and the strong policy considerations favoring parental custody over that of nonparents (*In re Carmaleta B.* (1978) 21 Cal.3d 482, 489 [146 Cal.Rptr. 623, 579 P.2d 514]) we are persuaded that the holdings in *Cynthia K., George G.,* and *Robert P.* are soundly reasoned and should be followed. Thus, we hold that the appropriate standard to be applied herein requires proof by clear and convincing evidence. While the record is silent as to which standard was employed, we may properly presume that the correct "clear and convincing evidence" standard was applied. (See *In re Cynthia K., supra,* 75 Cal.App.3d 81, 86.) The evidence under review (discussed *infra*) adequately demonstrates compliance with that more stringent standard.

[3]The Legislature provided the more stringent standard limited to proceedings under subdivision (a)(7). (Stats. 1977, ch. 1252, § 75, operative July 1, 1978.) In so doing, it came full circle from its initial point of departure. (Stats. 1973, ch. 686, added subd. (a)(7) providing "reasonable doubt" standard; Stats. 1976, ch. 940, substituted "clear and convincing evidence" for former standard in subd. (a)(7); see also *In re Rose G., supra,* at p. 420; *In re Cynthia K., supra,* at p. 85, fn. 2.)

[4]We note that the principal concern in *In re Rose G.* dealt with the constitutional validity of the statutory presumption (Civ. Code, § 232, subd. (a)(1), formerly § 232, subd. (a)) affecting the burden of producing evidence (see Evid. Code, §§ 603, 604) and may be distinguished on that basis. (See *In re Rose G., supra,* at pp. 420-421.)

(See *In re Robert P., supra,* 61 Cal.App.3d 310, 319.) That standard is for the guidance of the trial court only; on review, our function is limited to a determination whether substantial evidence exists to support the conclusions reached by the trial court in utilizing the appropriate standard. (See *Crail* v. *Blakely* (1973) 8 Cal.3d 744, 750 [106 Cal.Rptr. 187, 505 P.2d 1027]; see also Witkin, Cal. Evidence (2d ed. 1966) § 209, pp. 190-191.)

## II.

### *Sufficiency of the Findings*

Carol challenges the sufficiency of the findings underlying the judgment grounded upon neglect (subd. (a)(2)) and incapacitating mental illness (subd. (a)(6)). We consider the latter claim initially.

Preliminarily, we focus upon Carol's contention that the statutory test sanctioning termination of parental custody if "incapable of supporting or controlling the child in a proper manner [due to] . . . mental illness" (subd. (a)(6)) is unconstitutionally vague and incapable of objective application. We disagree. A substantially similar claim was urged and rejected in *In re Baby Boy T.* (1970) 9 Cal.App.3d 815 [88 Cal.Rptr. 418], which held that the legislative intent in enacting the subdivision (formerly § 232, subd. (g)) was to adopt the substantive definitions then provided by Welfare and Institutions Code former section 5550[5] (at pp. 820-821). (See also *In re Eugene W.* (1972) 29 Cal.App.3d 623, 628, fn. 2 [105 Cal.Rptr. 736].) Significantly, our state Supreme Court has expressly approved the definitions of mental illness relied upon in the *In re Baby Boy T.* and *Eugene W.* decisions. (See *In re Carmaleta B., supra,* 21 Cal.3d 482, 490-492.) The resulting effect measured against a standard of inability to support or control the minor in a "proper manner" is generally understood to mean "such control as parents ordinarily exercise . . . [and implies] . . . the usual incidents of the exercise of control" over the child. (See *Marr* v. *Superior Court* (1952) 114 Cal.App.2d 527, 530 [250 P.2d 739]; see also *In re Edwards* (1930) 208 Cal. 725, 733 [284 P. 916].) No vagueness or fatal uncertainty is manifested in the statutory language either facially or in its application. (Cf. *In re Robert P., supra,* 61 Cal.App.3d 310, 318.) We so hold.

---

[5]Former section 5550 then provided, in pertinent part, as follows: " 'Mentally ill persons,' as used in this code, means persons who come within either or both of the following descriptions: (a) Who are of such mental condition that they are in need of supervision, treatment, care or restraint, (b) Who are of such mental condition that they are dangerous to themselves or to the person or property of others, and are in need of supervision, treatment, care or restraint." (Stats. 1965, ch. 391, p. 1654, repealed, Stats. 1968, ch. 798, p. 1544.)

In assessing Carol's further claim regarding the sufficiency of the evidence to support the challenged finding, our function is governed by clearly defined principles of review: ■ It has been repeatedly held that "When a finding of fact is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. (*Brewer* v. *Simpson,* 53 Cal.2d 567, 583 . . .; *Primm* v. *Primm,* 46 Cal.2d 690, 693 . . . .) [Further] [¶] When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. (*Brewer* v. *Simpson, supra,* 53 Cal.2d 567, 583; *Primm* v. *Primm, supra,* 46 Cal.2d 690, 694.)" (*Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.,* 66 Cal.2d 782, 784-785 [59 Cal.Rptr. 141, 427 P.2d 805].) And, as summarized by our Supreme Court in *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480]: "In resolving the issue of the sufficiency of the evidence, we are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party (*Leming* v. *Oilfields Trucking Co.* (1955) 44 Cal.2d 343, 346 . . .; *Bancroft-Whitney Co.* v. *McHugh* (1913) 166 Cal. 140, 142 . . .; 6 Witkin, Cal. Procedure (2d ed. 1971) § 245, at p. 4236) and in support of the judgment (*Waller* v. *Brooks* (1968) 267 Cal.App.2d 389, 394 . . . .) All issues of credibility are likewise within the province of the trier of fact. (*Estate of Teel* (1944) 25 Cal.2d 520, 526 . . . .) 'In brief, the appellate court ordinarily *looks only at the evidence supporting the successful party, and disregards the contrary showing.*' (6 Witkin, Cal. Procedure, *supra,* § 249, at p. 4241.) All conflicts, therefore, must be resolved in favor of the respondent. (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 . . . .)"

■ In the light of the foregoing principles, we consider the evidence in the record to determine its sufficiency to support the challenged finding. In so doing, we disregard the conflicting and unfavorable evidence which Carol emphasizes in her brief. (See *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480].)

Two qualified psychiatrists[6] testified as to appellant's long-standing mental illness—diagnosed as a form of chronic schizophrenia—rendering

---

[6]Carol's attack on Dr. Peschau's competency to testify on grounds of lack of statutory certification (see Welf. & Inst. Code, § 6750) is unwarranted. The disjunctive requirement imposed under Civil Code section 232, subdivision (a)(6) is met so long as the requisite certification is shown *before* his testimony is received. That requirement was satisfied as found by the trial court.

her incapable of providing either emotional support or proper parental control for the two children. Their opinions were amply supported by other substantial evidence revealing an unfortunate history of hospitalizations due to psychiatric episodes, frequently marked by morbid hallucinations and a complete detachment from reality. On one occasion in 1974, Carol engaged in an unprovoked attack upon one of the assigned social case workers; on yet another, she demonstrated a total inability to cope with the aggressive demands of her 12-year-old son, Robert (to whom she surrendered her public assistance check after he had ransacked the family home), resulting in a further period of hospitalization. The unstable family life was exacerbated by frequent changes of residence,[7] failure to impose needed discipline, irregular—and often strained—visits with the youngsters accompanied by broken promises to soon reunite as a family unit. Although the evidence reflects encouraging progress in Carol's ability to function normally, the medical testimony strongly indicated that the added stress in caring for the needs of growing children would likely result in aggravating her presently quiescent symptoms, thus producing further disabling psychiatric reactions.

While the sum of the evidence is not without conflict, as we have noted in another context our "paramount responsibility . . . [is] . . . to determine what would be best in the child's interests" (*In re D. L. C.* (1976) 54 Cal.App.3d 840, 848 [126 Cal.Rptr. 863]); the weight to be given such rehabilitation efforts and justification for past deficiencies is a matter for the trial court whose province we may not invade. (See *In re Morrow* (1970) 9 Cal.App.3d 39, 57 [88 Cal.Rptr. 142] [disapproved on other grounds, *Hollister Convalescent Hosp., Inc.* v. *Rico* (1975) 15 Cal.3d 660, 674 (125 Cal.Rptr. 757, 542 P.2d 1349)].) We conclude there is no merit in Carol's claim.

Since the proven finding of Carol's continuing mental illness rendering her incapable of providing proper support or control independently supports the judgment entered, nothing is to be gained by conducting a further examination of the evidence of impoverished circumstances and consequent deprival upon which the alternative finding of neglect is largely based. Thus, we rest our decision solely on the ground alleged and proved pursuant to the provisions of subdivision (a)(6).

---

[7]During the three years prior to trial, Carol herself had no less than thirteen different residence addresses.

## III.

### *Failure to Consider Less Drastic Means*

Carol next contends that before state action may be undertaken to involuntarily terminate the natural relationship of parent and child, less drastic alternatives, such as provision for child protection services, must first be explored.[8] We agree with the principle advanced.

It is now well recognized that prelude to a judicial determination resulting in the permanent severance of the vitally significant parent-child relationship, the trial court should consider less severe available alternatives designed to keep the family unit intact. (*In re Susan M.* (1975) 53 Cal.App.3d 300, 310-311 [125 Cal.Rptr. 707]; *In re T. M. R.* (1974) 41 Cal.App.3d 694, 703 [116 Cal.Rptr. 292]; accord: *In re Carmaleta, supra,* 21 Cal.3d 482, 489; *In re Jacqueline H., supra,* 21 Cal.3d 170, 177.) But the record does not support Carol's claim that the Department was derelict in failing to explore and offer such alternative services.

The supervising social services worker testified that while some attempt had been made to provide supportive services, no actual referral was made to the children's protective services unit since Carol's lack of motivation due to her chronic mental illness offered little likelihood of success. To the extent that the Department's qualified denial constituted a failure to meaningfully consider the appropriateness of such services, the decision whether to order them and delay the proceedings pending evaluation was committed to the sound discretion of the trial court. (*In re Susan M., supra,* 53 Cal.App.3d 300, 311.) In expressly finding that the services should not be offered in order to avoid jeopardizing the children's best interests as a result of delay, no abuse of discretion was manifested.[9]

---

[8]Welfare and Institutions Code sections 16500-16511 mandate establishment of specialized units by each county welfare department to provide a systematic program of child protective services defined as "public social services which supplement, or substitute for, parental care and supervision . . . ." (§ 16502.5.)

[9]Carol's reliance on the holding in *In re T. M. R., supra,* 41 Cal.App.3d 694, is misplaced. In that case the court was persuaded by the absence of any immediate adoption prospects in suggesting that maintenance of the existing dependent-child status was the least drastic measure. However, that circumstance is neither present nor argued herein. Indeed, in view of the children's uninterrupted 10 years' residency with the foster parents who wish to adopt them, the trial court could reasonably conclude that severance of the parental relationship in order to permit the proposed adoption was demonstrably the least drastic measure.

## IV.

### *Admissibility of the Probation Report*

While recognizing the statutory requirement for an investigation and written report by the designated county agency adjunct to the filing of the petition (see Civ. Code, § 233), Carol challenges the legal sufficiency of the report received in evidence over objection on grounds of inadequate investigation, hearsay and unjustified recommendations. The challenge is unconvincing.

■ Initially, it appears settled that the written report mandated by the statute is admissible over a general hearsay objection so long as a meaningful opportunity to cross-examine and to controvert the content of the report is afforded. (See *In re George G., supra*, 68 Cal.App.3d 146, 155-156; *In re Rose G., supra*, 57 Cal.App.3d 406, 425, fn. 5, 426; cf. *Long v. Long* (1967) 251 Cal.App.2d 732, 736 [59 Cal.Rptr. 790] [imposing similar safeguards concerning probation reports filed in juvenile proceedings under authority of former § 582 (now § 281) of the Welf. & Inst. Code].) Unlike the factual circumstances reflected in *In re George G.* (at pp. 157-158), Carol was permitted wide latitude in cross-examining many of the individuals whose statements were contained in the report, and could readily have availed herself of the opportunity to examine the investigating and reporting probation officer.

Contrary to Carol's assertion, the report on its face discloses that the required investigation was adequately performed; incorporation of copies of the official juvenile court records relating to the children's dependency status clearly falls within the statutory directive to investigate "the circumstances of said minor . . . and [those] alleged to bring said minor person within . . . the provisions of section 232." (Civ. Code, § 233.) Nor is the recommended termination of parental relationship unsupported by the content of the report, as Carol contends. Both asserted claims arguably are addressed to the weight of the report rather than to admissibility, a matter peculiarly within the province of the trial court. (See *Agnew* v. *City of Los Angeles* (1950) 97 Cal.App.2d 557, 565 [218 P.2d 66].) Moreover, there was an abundance of evidence independent of the report to sustain the trial court's findings. Any technical deficiencies in the report itself were clearly harmless.

## V.

### *Minors' Right to Appointed Counsel*

■  Carol's final claim of error concerns the failure of the trial court to ascertain the children's express desires and to appoint separate counsel to represent their interests. The claim is spurious.

Not only did Carol fail to raise such objection below, a circumstance generally foreclosing review on appeal (see *Estate of Cooper* (1970) 11 Cal.App.3d 1114, 1122-1123 [90 Cal.Rptr. 283]), but she actively resisted the Department's request that the court consider the wishes of the children independently.

It has been consistently held that the governing statutes (Civ. Code, §§ 237, 237.5) permit but do not mandate the appointment of separate counsel to represent the minors' interests during emancipation proceedings. (See *In re Richard E.* (1978) 21 Cal.3d 349, 353-354 [146 Cal.Rptr. 604, 579 P.2d 495]; *In re Marcos S.* (1977) 73 Cal.App.3d 768, 778-779 [140 Cal.Rptr. 912]; *In re Dunlap* (1976) 62 Cal.App.3d 428, 438-439 [133 Cal.Rptr. 310] [disapproved on other grounds, *In re Richard E., supra*].) Only when it is found that the child's separate interests would be otherwise unprotected is the trial court required to exercise its discretion in favor of appointing separate counsel. (See *In re Richard E., supra*, 21 Cal.3d 349, 354.) The authorities relied upon by Carol are factually distinguishable (both *In re Richard E., supra*, and *In re Dunlap, supra*, involved a denial of an express request for separate counsel; no similar request was made herein). Moreover, the fact that the proceedings were instituted by a public agency on behalf of long-standing dependent-child wards of the court, constitutes "significant factors tending to establish that the [children's] interests . . . are represented." (*In re Dunlap, supra*, 62 Cal.App.3d 428, 439, fn. 2; see also *In re Marcos S., supra*, 73 Cal.App.3d 768, 780.)

As the court observed in *In re Richard E.* (at p. 354): "A proceeding to free a child from parental custody and control is essentially accusatory in nature, directed to challenges against the parent—not against the child. [Citation.] . . . Thus, the issue at a hearing is whether a parent is fit to raise the child. To that end are directed all the arguments of opposing parties, . . . each side generally contending it is protecting the best interests of the child. It is thus likely that in a particular case the court will be fully advised of matters affecting the minor's best interests, and

little assistance may be expected from independent counsel for the minor in furtherance of his client's or the court's interests."

Here, the trial court was so fully advised: Carol was extended adequate opportunity to present evidence tending to subserve the children's best interests. Notwithstanding Carol's objection, evidence of the children's preference to remain with their foster parents was admitted through the testimony of others; additionally, evidence of the inter-family relationships (between the minors on the one hand and Carol and her other children, and the foster parents and their children on the other) was likewise presented for the court's consideration. Under such circumstances, it is difficult to imagine, nor does Carol even suggest, what other meaningful assistance independent counsel might have offered. The record manifestly demonstrates that the interests of the minors herein were adequately protected without the intervention of appointed counsel. (*In re Marcos S., supra,* 73 Cal.App.3d 768, 778.) We find no error as claimed.

Judgment affirmed.

Elkington, J., and Newsom, J., concurred.