54 Cal.App.3d 840 (1976)
126 Cal. Rptr. 863
In re D.L.C., a Minor.
BRUCE BROWNFIELD et al., Petitioners and Respondents,
v.
MARGARET JOYCE BROWN, Objector and Appellant.
Docket No. 36171.
Court of Appeals of California, First District, Division One.
January 27, 1976.
*842 COUNSEL
Leggett, Gianola, Dacey, Kramer, Sawyer & Intintoli and Anthony J. Intintoli, Jr., for Objector and Appellant.
Coombs, Dunlap, Dunlap & Champlin, W. Scott Snowden and Robert H. Mnookin for Plaintiffs and Respondents.
*843 OPINION
LAZARUS, J.[*]
This appeal is from a judgment declaring Deanna, a little girl, born December 22, 1968, free from the custody and control of her natural mother, objector and appellant Margaret Joyce Brown.
Petitioners and respondents Bruce and Gloria Brownfield are the child's foster parents who have had the child under their custodial care since August 28, 1969. Their petition alleged abandonment by the child's legal and natural fathers (Civ. Code, § 232, subd. (a)(1)) and cruelty or neglect by her natural mother. (Civ. Code, § 232, subd. (a)(2).) Also pending is a petition for the adoption of the child filed by the Brownfields at the same time that they filed their petition to have the minor declared free from parental control.
The Chief Probation Officer of Napa County, pursuant to Civil Code section 233,[1] submitted her report recommending that the petition be granted.
The matter thereafter came for hearing on May 9, 1974, before The Honorable Robert E. Roberts. No appearance was made by the child's natural or legal fathers. Respondents were permitted by stipulation of counsel and leave of court to introduce evidence under section 232, subdivision (a)(7). At the hearing thereafter the court rendered the judgment now under attack.
The mother appeals on two grounds; insufficiency of the evidence, and alleged denial of due process.

Insufficiency of the Evidence
(1) We note at the outset, as mentioned by this court in In re Morrow (1970) 9 Cal. App.3d 39 [88 Cal. Rptr. 142], in raising this issue the objecting mother is confronted with the rule that "`All evidence most favorable to respondents must be accepted as true and that which is *844 unfavorable discarded as not having sufficient verity to be accepted by the trier of fact.'" (Id. at p. 46.)
In its judgment and order declaring the child free from parental custody, the trial court made extensive findings of fact. The following are the pertinent facts as they appear from the trial court's findings and our own reference to the record:
That on July 25, 1969, Deanna, then seven months old, was brought to the emergency room at the Queen of the Valley Hospital, Napa, California. The examining physician discovered a fresh spiral fracture of the left femur. In addition X-rays disclosed a two- to three-week-old fracture of the right tibia, and fractures of both the right and left radius approximately three months old. Police officers were summoned and the Napa County Juvenile Probation Department was contacted;
That the probation department thereafter filed a petition with the juvenile court under section 600, subdivision (b), of the Welfare and Institutions Code, and the Napa County Superior Court sitting as a juvenile court declared the child a dependent child of the court on the basis that her home "is an unfit place for her by reason of the neglect of her mother in that some person or persons inflicted physical abuse on this child to the extent that there are fractures in all four of her limbs." The child continuously remained a dependent child of the court since that time;
That because of the injuries inflicted on the child, appellant was prosecuted under Penal Code section 273a, subdivision (1). That case was resolved by appellant's entering a guilty plea to a violation of Penal Code section 273a, subdivision (2), which makes it a misdemeanor to wilfully permit a child to be injured under circumstances or conditions other than those likely to produce great bodily harm or death;
That upon the child's release from the hospital on August 28, 1969, she was placed in respondents' home as a foster child. She was in a body cast securing three of her limbs, and remained in the cast for several weeks thereafter. She has continuously resided in the home of her foster parents since her release from the hospital;
That when the body cast was removed, the child commenced to suffer from night terrors and exhibited hyperkinetic behavior. As the psychological relationship with respondents developed, many of these symptoms *845 of psychological disturbance ended; however, she continued to have occasional night terrors;
That during 1970 and early 1971, appellant visited the child in respondents' home on approximately six occasions. Her last visit was in June of 1971 after which the juvenile court terminated visitation based on the recommendation of the social worker in charge of the child's case and the recommendation of the consulting psychiatrist that continuing visitation would disrupt the child's developing emotional stability. The child has not seen her mother since she was 31 months old.
Dr. Barry Grundland, a psychiatrist, to whom the child's case was initially referred on November 25, 1970, testified at some length at the hearing. It was on the basis of his testimony that the court found that during the period that the child has resided with respondents, she has developed a psychological parent-child relationship with them. She sees respondents as her parents, depends on them and loves them as parents. The child does not know appellant and has no psychological relationship with her.
The court also found that as a result of the trauma that the child suffered as an infant, she is particularly sensitive and in need of continuity in her psychological relationship with the respondents. Because of this sensitivity, there is a substantial chance that removal of the child from the home of respondents would result in serious emotional harm. There is also a reasonable possibility that the significant emotional harm would occur even if she were left in respondents' home and introduced to appellant as her mother over a period of time during which visitations took place.
The court also found that respondents' home is a beneficial home for the child and that respondents have filed a petition for adoption of the child. The department of health has given its consent to and recommended the approval of the petition provided the child is freed for adoption.
Appellant contends that the facts proved at the hearing "do not justify" severance of the parental relationship between appellant and the child under either section 232, subdivision (a)(2) or section 232, subdivision (a)(7). The test on appeal, as we have heretofore indicated, is not whether the facts "justify" the findings but rather whether there is substantial evidence to support the findings of the court. (In re Morrow, *846 supra, 9 Cal. App.3d 39 at pp. 46-47; In re Gano (1958) 160 Cal. App.2d 700, 705 [325 P.2d 485].) (2) In the instant case, the evidence clearly supports the findings of the trial court and, in terms of appellant's contention, amply "justify" those findings.
Section 232, subdivision (a)(2), states that an action may be brought for the purpose of having a person under the age of 18 years declared free from the custody and control of either or both parents when that person is one "Who has been cruelly treated or neglected by either or both of his parents, if such person has been a dependent child of the juvenile court, and such parent or parents deprived of his custody for the period of one year prior to the filing of a petition praying that he be declared free from the custody and control of such cruel or neglectful parent or parents."
Section 232, subdivision (a)(7), states that a child may be declared free from the custody and control of his parent or parents when the child is one "Who has been cared for in one or more foster homes under the supervision of the juvenile court, the county welfare department or other public or private licensed child-placing agency for two or more consecutive years, providing that the court finds beyond reasonable doubt that return of the child to his parent or parents would be detrimental to the child and that the parent or parents have failed during such period, and are likely to fail in the future, to [¶] (i) Provide a home for said child; [¶] (ii) Provide care and control for the child; and [¶] (iii) Maintain an adequate parental relationship with the child. [¶] Physical custody of the child by the parent or parents for insubstantial periods of time during the required two-year period will not serve to interrupt the running of such period."
The trial court made the necessary findings under both subdivisions. As to section 232, subdivision (a)(2), the court found: That appellant neglected the child in that she permitted her to be subjected to extreme abuse; that the child has been a dependent child of the juvenile court; and that appellant has been deprived of custody of the child for a period in excess of one year.
As to section 232, subdivision (a)(7), the court found: That the child has been cared for in a foster home under the supervision of the juvenile court for more than two consecutive years; that beyond a reasonable doubt the return of the child to appellant would be detrimental to the *847 child and that appellant is not likely in the future to maintain an adequate parental relationship with the child.[2]
In addition, the court found as to both subdivisions that it will serve and protect the interests and welfare of the child to free her from the custody of appellant.
The findings made by the trial court are, in all respects, supported by the evidence. Indeed, appellant does not seriously contest the findings made by the trial court but relies mainly on the gratifying showing at the hearing that she has demonstrated encouraging success in her own rehabilitation. She is the mother of three other minor children. It appears that she has now regained custody of her two older daughters, both of whom were removed from her custody by order of the Napa County Juvenile Court at the same time as Deanna and that they are reasonably happy and well adjusted in their present home environment. Her youngest child is a son, born after Deanna, who now lives with his mother and step-father.
Appellant was entitled to and did present evidence concerning the circumstances and events that led to the order by which Deanna was declared to be a dependent of the court. (See In re Morrow, supra, 9 Cal. App.3d 39 at p. 55.) Her testimony that she did not know how the child was injured is credible. There was no evidence to suggest that she inflicted the injuries or that she was present when the child was injured. *848 The only inference to be drawn from the testimony is that someone else was responsible. One possible suspect was a man to whom appellant had been briefly married. This man has been convicted of murder, but she had no reason to believe until he was arrested on the murder charge that he would injure anyone.
Appellant also testified that she now very sensibly attends a school for mothers with child-rearing problems. She adds that if the child were returned to her custody and problems developed, she would seek help. She and her present husband reside with her three children and her husband's two sons in a two-acre home in Napa.
A social worker reported that appellant's "housekeeping standards are lower than desirable but she appears to be a concerned parent, is able to limit the children and cope with whatever child-raising problems arise." The chief probation officer reported that appellant has made substantial gains in her level of functioning, but she described the home situation as "marginal."
(3) Although appellant has demonstrated commendable progress in improving her ability to function as a good parent, it is nevertheless the paramount responsibility of the court in these proceedings to determine what would be best in the child's interests. Section 232.5 states, "The provisions of this chapter shall be liberally construed to serve and protect the interests and welfare of the child." In In re Morrow, supra, 9 Cal. App.3d 39 at page 57, which also involved proceedings under section 232, the court noted that the appellant therein had made praiseworthy and apparently successful efforts to rehabilitate herself, but nevertheless affirmed the lower court's order declaring the minor free from parental control and custody, stating that "The weight to be given to the rehabilitation of appellant and her excuses for past conduct was for the trial court."
Appellant cites In re T.M.R. (1974) 41 Cal. App.3d 694, 703 [116 Cal. Rptr. 292], wherein the court states, "The relationship of a natural parent to her children is a vital human relationship which has far-reaching implications for the growth and development of the child. [Citation.] Thus the involuntary termination of that relationship by state action must be viewed as a drastic remedy which should be resorted to only in extreme cases of neglect or abandonment." The evidence presented to the trial court must demonstrate a compelling need for such action. (Id.)
*849 (4) In In re B.G. (1974) 11 Cal.3d 679 [114 Cal. Rptr. 444, 523 P.2d 244], our Supreme Court, in an action concerned with juvenile court wardship proceedings under the dependency provisions of section 600 et seq. of the Welfare and Institutions Code, held that an award of custody to a nonparent on the basis of the parent's unfitness to care for the child must be supported by an express finding that parental custody will be detrimental to the child (id. at p. 695) and that finding must be supported by evidence showing that parental custody would actually harm the child. (Id. at p. 699.)
These cases do not direct a reversal in the instant case, but support affirmance of the order of the lower court which found beyond a reasonable doubt that returning the child to appellant would be detrimental to the child.
Dr. Barry Grundland, the psychiatrist to whom the case was referred in 1970, testified that the case was initially referred to him because of respondents' concern over the child's hyperkinetic behavior and nightmares. His opinion at that time was that the child "definitely was having some depression. She was fearful. She was in a great deal of conflict as to what happened to her, ..." In 1972, the doctor recommended that appellant discontinue visits to the child as the child's foster parents were becoming her psychological parents and the introduction of appellant could result in a relapse in the child's growth. He described the relationship between the child and her foster parents as exactly like a parent-child relationship and concluded that respondents, the foster parents, are the psychological parents of the child.
He concluded that if this present psychological relationship between the child and respondents were severed, the child would suffer "tremendous trauma" and that this would mean that there would also be the added risk that the child could easily withdraw back to previous patterns of behavior. He stated that "she would probably begin to develop nightmares and night terrors again, and she would begin to develop all kinds of fantasies as to what happened to her psychological parents." He also stated that basically the same thing would happen if the child were introduced to appellant through visitations with the thought of eventually placing her with appellant. There was no contrary evidence presented. Clearly, the findings of the trial court are supported by the evidence.

*850 Denial of Due Process

(5) Citing as authority Stanley v. Illinois (1972) 405 U.S. 645 [31 L.Ed.2d 551, 92 S.Ct. 1208], appellant asserts that she was denied due process of law by the court's termination of the natural relationship between appellant and the child. Her argument is that a mother's right to custody of her children is a fundamental right which can only be infringed if the state advances a compelling state interest and that in the instant case "there has been no demonstration that parental custody at this time will be detrimental to the minor." Appellant's argument manifestly appears to be without merit. As stated above, the evidence presented at trial, primarily that of psychiatrist Dr. Barry Grundland, was that it would be detrimental to the child to return her to the custody of appellant. Appellant presented no contrary expert testimony.
The case upon which appellant relies, Stanley v. Illinois, supra, 405 U.S. 645, does not support appellant's contention. In fact, that case states (at p. 649 [31 L.Ed.2d at p. 557]), "The State's right  indeed, duty  to protect minor children through a judicial determination of their interests in a neglect proceeding is not challenged here." Stanley (at pp. 647-658 [31 L.Ed.2d at pp. 556-563]) held that under the due process clause of the Fourteenth Amendment, petitioner, an unwed father, was entitled to a hearing on his fitness as a parent before his children could be taken from him; that it would be a denial of due process to presume that unmarried fathers are necessarily unsuitable and neglectful parents. (See also In re Lisa R. (1975) 13 Cal.3d 636, 647-651 [119 Cal. Rptr. 475, 532 P.2d 123], in which the California Supreme Court had before it a similar issue.)
Stanley, in fact clearly recognizes that the state has a legitimate interest in protecting the welfare of minors. The court stated, "We do not question the assertion that neglectful parents may be separated from their children. [¶] But we are here not asked to evaluate the legitimacy of the state ends, rather, to determine whether the means used to achieve these ends are constitutionally defensible." (Stanley v. Illinois, supra, 405 U.S. 645 at p. 652 [31 L.Ed.2d at p. 559]; italics added.)
(6) In re Eugene W. (1972) 29 Cal. App.3d 623, 629 [105 Cal. Rptr. 736]. recognizes that the legislative intent behind section 232 is to promote the welfare of the child and states that "it seems indisputable that, in order to facilitate this goal, the state as a parens patriae not only has a compelling interest but also a duty to sever the parental bonds once [a] situation contemplated by the statute arises."
*851 In another case involving code section 232, the court stated. "The purpose of the statute is to protect children, ... The interest sought to be protected is that of the welfare of a child. Its need to be raised with love, emotional security and physical safety is paramount to any right of a neglectful parent to have the custody and physical proximity of its child.... However, a child is not a chattel.... [T]he issue is best presented not by the question `Who has the right to custody of the child?' but by the question `What will promote and protect the best interests of the child?'" (In re Sherman M. (1974) 39 Cal. App.3d 40, 44-45 [113 Cal. Rptr. 847].)
(7) Procedural due process requires sufficient notice to the parents with an opportunity for them to be heard. (In re Creely (1945) 70 Cal. App.2d 186, 190 [160 P.2d 870].) Section 237.5 provides that an indigent parent is entitled to court-appointed counsel. (See In re Rodriquez (1973) 34 Cal. App.3d 510 [110 Cal. Rptr. 56].) Appellant does not contend that she was denied any of these rights and the record does not indicate any such denial.
There is no conceivable basis here, therefore, for a finding that appellant in the instant case was denied due process of law.
The order declaring the minor free from parental control is affirmed.
Molinari, P.J., and Sims, J., concurred.
NOTES
[*] Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.
[1] All references to code sections are to the Civil Code unless otherwise designated.
[2] As to section 232, subdivision (a)(7), the findings may have been deficient in that the court omitted to include a specific finding beyond a reasonable doubt that the parent or parents have failed during such period, and are likely to fail in the future to provide a home for said child and provide care and control for the child. (See Civ. Code, § 232, subd. (a)(7)(i) and (ii).) The court did find beyond a reasonable doubt, however, that returning the child to appellant would be detrimental to her and that no one other than respondents is likely to maintain an adequate parental relationship with the child. (See Civ. Code, § 232, subd. (a)(7)(iii).) In addition the court also found that the child has resided continuously in respondents' home since August 28, 1969. There is also evidence to support a finding beyond a reasonable doubt that appellant is likely to fail in the future to provide a home, care and control of the child. The present home situation is described as "marginal" and only "hopefully" adequate for the two older girls. A social worker reported the return of the child to appellant's home would in fact jeopardize the successful return of the older children.

Although the point has not been raised in connection with this appeal, instead of deeming it waived, we exercise our prerogative under Code of Civil Procedure section 909, and this court finds beyond a reasonable doubt that Deanna's parents have failed for two or more consecutive years to provide a home for said child, or to provide care and control for the child. (See Guardianship of Marino (1973) 30 Cal. App.3d 952, 959-961 [106 Cal. Rptr. 655]; see also 6 Witkin. Cal. Procedure (2d ed. 1971) Appeal. § 425. p. 4391.)