[No. D003751. Fourth Dist., Div. One. Sept. 14, 1987.]

In re BABY BOY S.
MICHAEL M. et al., Petitioners and Appellants, v.
LORA S., Objector and Respondent.

COUNSEL

Lee W. Selvig for Petitioners and Appellants.

Kathryn F. Ashworth, under appointment by the Court of Appeal, for Objector and Appellant.

## OPINION

**BUTLER, J.**—Michael M. and Judith M. (the M's) appeal judgments dismissing their Civil Code[1] section 232, subdivision (a)(l) petition to have declared Baby Boy S. free from the parental custody and control of his mother Lora S. and his father Jeffrey M. The M's contend the court abused its discretion in failing to find Lora and Jeffrey abandoned the baby, erred in failing to consider the best interests and welfare of the baby before reaching its decision on the abandonment issue, contend the parental preference of recent decisions is a return to outdated concepts of parental property rights in children, and argue courts must presume detriment to the child when taken from the secure environment of potential adoptive parents. We shall conclude the court correctly considered only the issue of abandonment as presented by the petition. The best interests of, and detriment to, the child are not cognizable by the court in deciding the child was not abandoned.[2] As substantial evidence supports the judgments, we affirm.

---

[1] All statutory references are to the Civil Code unless otherwise specified.
When referring to statutory subparts we omit repetition of the word "subdivision."

[2] The judgments were entered October 4, 1985. Notice of appeal was filed October 9, 1985, and an amended notice filed October 15, 1985. September 30, 1986, the M's requested the record be augmented to include minutes of court proceedings held on October 17, November 19, and November 26 in 1985, February 11, February 26, April 2, April 16, May 2, July 9, and September 18, all in 1986. The augmentation was sought "to allow a proper review of the issues on appeal, including the current circumstances of the minor child, and in order to avoid serial, but related, appeals." We granted the request October 17, 1986. The minutes disclose orders for parental visitation, psychiatric evaluations of the parents, Jeffrey's custody on charges of assaulting Lora, psychiatric evaluation of the child, and order relieving Lora and Jeffrey's trial counsel Brian Cochran and substitution of Kathryn Ashworth. The M's' request for a stay of parental visitation rights was denied by the trial court. We denied their request for supersedeas and temporary stay on October 30, 1985, and clarified our ruling on November 4, 1985. The Supreme Court denied the M's' petition for review of our order.

May 29, 1987, the M's filed another request to augment the record to include motions for and opposition to a plan for reunification of Lora and the child, transcripts of hearings held October 30, 1986, and April 30, 1987, and an order issued by the court April 30, 1987, to the effect removal of the child from the M's would result in extreme detriment to the child, reunification of the child with Lora or Jeffrey would result in detriment, and ordering the care, custody and control of the child remain with the M's. The augmentation was sought to demonstrate the judgments from which the appeal was taken and now under our consideration conflict with the later orders sought to be included in the record and thus the earlier judgments should be reversed and the matter remanded for further proceedings.

We denied the May 29, 1987, augmentation request. The notice of appeal from the October 4, 1985, judgments divested the trial court of jurisdiction further to proceed on the substantive issue of the child's freedom from the custody and control of the parents. We decline to expand these appellate proceedings to include a review of later hearings and orders of the court which in effect vacate the judgments on appeal. While present review of these later orders may arguably result in judicial economy and a speedier resolution of the child's placement, cases such as this should track appellate procedural process. This journey to the resolution of the issues will proceed one step at a time.

I

Lora's marriage to James S. produced a son. The marriage was eventually dissolved. San Bernardino Attorney Noll Richardson represented Lora. Lora met Jeffrey and became pregnant. After a visit with family in Oklahoma, Lora returned to California and in February 1984 contacted Richardson and discussed placement of the expected child for adoption. Richardson offered to arrange the adoption with a couple in San Diego, the M's. Richardson prepared a section 225m[3] consent which was signed by Lora and the M's consenting to her representation of the M's and Lora in connection with the adoption. Jeffrey did not sign the consent. Richardson did not discuss with any of the parties their rights to independent counsel.

The child was born May 13, 1984. Lora signed documents releasing custody of the infant to the M's. She did not see the contents of the paper, only the portion reserved for her signature. She requested the sex of the baby and the identity of the M's be kept from her to avoid an attachment to the child and resulting reluctance to go through with the adoption. Richardson was not present at the signing. A day later, the M's took the child.

Richardson paid $1,000 to Lora after the child's birth and placement with the M's. The check was drawn on her personal account and the proceeds after encashment by Lora went to a friend who treated the money as a savings account from which Lora drew sums from time to time for various purposes. During this period, Lora was receiving AFDC payments. Richardson charged the M's $3,000 for her services. She testified $700 of these fees were transferred from her trust account to her personal account on which the $1,000 check to Lora was drawn. She also testified she refunded $700 to the M's from the fees already paid to her.

In June, Lora and Jeffrey resumed cohabitation and married in December 1984. In August, the San Bernardino Social Services Department asked Lora to sign a form authorizing medical treatment for the child. The form included the child's sex and the baby's name, and noted adoption proceedings were pending in San Diego. The letter advised Lora and Jeffrey of parental rights. Richardson had never discussed with Lora her right to refuse to consent to the adoption.

August 22, Lora and Jeffrey consulted with Richardson, telling her Jeffrey wanted the child returned to them. Richardson told them they had

---

[3] Section 225m in pertinent part provides: "Notwithstanding any other provision of law, it shall be unethical for an attorney to undertake the representation of both the prospective adopting parents and the natural parents of a child in any negotiations or proceedings in connection with an adoption unless a written consent is obtained from both parties."

little chance of getting the baby back and to do so would require a court proceeding. Further, the adoptive parents would be devastated over the loss of the child. Richardson refused to contact the M's or to disclose their address. She did not advise Lora and Jeffrey of the concept of abandonment and the consequences attendant upon placement of the child with the M's for six months. Believing they had no rights to reclaim the baby, Lora signed the medical form.

On December 4, 1984, almost seven months from Lora's relinquishment of the baby, Lora and Jeffrey met with Louisa Hill of the San Bernardino County Department of Social Services responsive to a request they consent to the child's adoption. For the first time, they learned of their right to refuse to consent to the adoption and to regain custody of their child. December 6, they signed a refusal to give consent to adoption and on that same day the M's filed their section 232(a)(1) petitions[4] to free the infant from their custody and control. The petitions, except for the names of the parents, are identical, alleging neither Lora nor Jeffrey has communicated with or supported or had contact with the child since May 14, 1984. The court entered two judgments denying the petitions as to Lora and Jeffrey. The M's appeal these judgments.

## II

Section 232 describes those minors who may be declared free from the custody and control of their parents. The statute at times relevant here provides in pertinent part as follows:

"(a) Description of person. An action may be brought for the purpose of having any child under the age of 18 years declared free from the custody and control of either or both of his or her parents when the child comes within any of the following descriptions: [¶] (1) The child has been left without provision for the child's identification by his or her parent or parents or by others or has been left by both of his or her parents or his or her sole parent in the care and custody of another for a period of six months or by one parent in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication from the parent or parents, with the intent on the part of the parent or parents to abandon the child. The failure to provide identification, failure to provide support, or failure to communicate shall be presumptive evidence

---

[4] A petition was filed as to Lora and another as to Jeffrey.

of the intent to abandon. If the parent or parents have made only token efforts to support or communicate with the child, the court may declare the child abandoned by the parent or parents. . . ."

■ The M's contend the trial court abused its discretion by finding Lora and Jeffrey, the natural parents, did not abandon the child.(2) Abandonment is a question of fact.

■ While they argue abuse of discretion, the M's actually contend there were insufficient facts to sustain the trial court's finding the natural parents did not abandon the child. ■ When a finding of fact is attacked on the grounds that it is not supported by substantial evidence, the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding. (*Guardianship of Phillip B.* (1983) 139 Cal.App.3d 407, 413 [188 Cal.Rptr. 781].) All evidence most favorable to the respondents must be accepted as true and that which is unfavorable discarded as not having sufficient verity to be accepted by the trier of fact. (*In re D.L.C.* (1976) 54 Cal.App.3d 840, 843-844 [126 Cal.Rptr. 863].) Here, the trial court found that Lora and Jeffrey did not intend to abandon their child. The trial court believed Lora and disbelieved the testimony of Richardson.

■ We decline the M's' invitation to reweigh the evidence and draw a conclusion different than that of the trial court. Our review of the record compels the conclusion substantial evidence supports the judgments. The petitions sought freedom of the child from parental custody and control under section 232(a)(1). Subdivision (a), so far as subdivision (1) is concerned, permits the action to be brought when the child has been left without provision for identification or has been left by both parents or a sole parent in the care and custody of another for a period of six months without provision for the child's support, or without communication from the parents, *with the intent on the part of the parents to abandon the child*. The failure to provide identification or support, or to communicate, is presumptive evidence of the intent to abandon.

The court made its order following oral argument: "You know, I suspect that this case probably points out the wisdom of the code section against joint representation. The case bothers me, and I can appreciate the absence of objection to the court's inquiry. I suspect counsel sensed that the court was somewhat concerned about the dual representation of counsel; certainly, in terms of omission and commission. It may have come out throughout the course of the hearing.

"A part of what concerns the court at this point is a part of the decision-making process, and that is, that there's a set of parents that will be broken

hearted because this court makes a determination one way or the other. What I'm presented with are excellent adoptive parents. Nothing even from the natural parents can be said that would change this court's opinion. Nothing has been said. With reference to the natural parents, certainly they don't present themselves as do the prospective adoptive parents. They don't present the wherewithal of the prospective adoptive parents and I suspect, were this a situation of social engineering, the decision would be very easy for this court. It's not an easy decision, but in terms of credibility, which I think is the central issue, it's not that hard for this court to make a determination that [Lora] presents herself as a credible witness; Miss Richardson does not, and in terms of the testimony, a witness that's believed can be believed to prove any fact; a witness that is disbelieved on significant issues, the testimony can be completely disregarded.

"I became concerned because I don't believe, in very important parts, the testimony of Noll Richardson. I don't believe where, in my opinion a duty to advise arose, that the mother was advised as to her rights or consequences. I'm concerned—and maybe it's a small point—about the thousand vis-à-vis the seven hundred, but weaves itself into the rest of this case, into the rest of the testimony, in terms of willful omissions or commissions by the party ostensibly representing both parties. That being my state of mind and my finding as to the credibility of witnesses, I'm certainly not in a posture to say that the presumption created, if in fact it's an accurate presumption—and based upon the testimony, I question whether or not the presumption was created; that is the presumption of abandonment—but even assuming it was created, it certainly has been rebutted by what this court believes to be the state of the evidence, and the petition to declare the minor free from the custody and control will be denied by the court."[5]

Substantial evidence supports that conclusion. During her pregnancy, Lora was concerned about caring for a second child. Jeffrey had left her. She turned to Richardson, her attorney, who failed to advise her of the consequences of her relinquishment of the baby, acted in a dual capacity, and was paid by the M's. During the six-month period, Lora and Jeffrey consulted with Richardson who again failed to advise them of their rights and discouraged them from pursuing any effort to regain custody. Richardson knew Jeffrey wanted the child returned, knew he was the father and knew he had not signed any relinquishment. She failed to suggest to him his right to independent counsel to advise him of custodial and other parental

---

[5] These comments by the court highlight the hazards of dual representation in adoption proceedings. While the section 225m written consent authorizes the dual representation, this case illustrates the almost inevitable impossibility of doing so completely. (Rules Prof. Conduct, rule 6-101.) When this actuality arises, an attorney must withdraw. (See Rules Prof. Conduct, rule 2-111(B)(2); Lezin, *Will Baby Make Three?* (Jan. 85) 5 Cal.Law. 28, 31.)

rights. Lora and Jeffrey were informed by Hill they need not consent to the adoption. Immediately, they declined to do so.

## III

■ The M's next argue the court failed to consider the best interests and welfare of the child in denying their petitions. The court heard testimony from psychiatrist Gerald Nelson to the effect removal of the child from the M's' custody would be devastating and detrimental. Dr. Nelson reviewed reports of other psychiatrists concerning the ability of the parents to assist the child to deal with the emotional trauma of removal. Psychiatrist Herbert N. Hurwitz was critical of Jeffrey and opined Lora was overwhelmed by past single parenting.

Other than their bald statement the court did not consider these matters, the M's do not point us to any part of the record to support their assertion. It is true the court did not refer to these issues in its statement prefatory to denial of the petitions. However, as we've noted, we indulge in every inference to support the judgment and assume the court did consider the issues of welfare and detriment to the child in denying the petitions.

In any event, the M's misconstrue the requirements laid out in section 232(a)(1) with respect to the findings to be made to declare a child free of parental control and custody by reason of the abandonment of the child.

Section 232.5 mandates the provisions of sections 232-239 shall be liberally construed to save and protect the interests and welfare of the child and at freedom from custody hearings the court "shall consider the wishes of the child" and "shall act in the best interests of the child." Section 232.6 states the purpose of sections 232-239 is to serve the welfare and best interests of the child by providing the stability and security of an "adoptive home when those conditions are otherwise missing from his or her life."

■ We do not consider sections 232.5 and 232.6 subordinate any of the three circumstances set out in section 232(a)(1), failure to identify, support or communicate, all with the intent to abandon, to the interests and welfare of the child. The existence of any of the three elements is *presumptive* evidence of intent to abandon. Absent intent on the part of the parents to abandon the child, as the court found here, the best interests and welfare criteria are simply not applicable. If otherwise, the objective manifestations of abandonment, as here, would compel an abandonment conclusion and free the child from parental custody and control, as parental intent would be weighed against the interests and welfare of the child. The record here would arguably support a finding custody with the M's is in the best

interests and welfare of the child. (*In re Baby Girl M.* (1984) 37 Cal.3d 65 [207 Cal.Rptr. 309, 688 P.2d 918].) While Lora and Jeffrey are not role models as parents, they have not abandoned the child, and its welfare and best interests are thus not relevant to the abandonment issue. The policy statements of sections 232.5 and 232.6 doubtless affect other subsections of section 232, i.e., a neglected or cruelly treated child who has been declared a dependent child of the juvenile court under any subdivision of section 300 of the Welfare and Institutions Code (§ 232(a)(2)); a child whose parents suffer disability because of alcohol or drugs, or are morally depraved, and the child has been a dependent child of the juvenile court and the parents have been deprived of its custody for a year preceding the filing of the section 232 petition (§ 232(a)(3)); a child whose parents are convicted of a felony and the facts of the crime prove their unfitness to have custody (§ 232(a)(4)). The other subdivisions of section 232(a) likewise refer to matters objectively determined and do not include the subjective intent of the parents as an element to consider in the freedom from custody and control proceedings.

Section 232(b) provides at all termination proceedings, the court shall consider the wishes of the child and "shall act in the best interests of the child." ■ Again, we read this admonition to require a finding by the court the best interests of the child are served by a grant or denial of the petition once the factual determination is made to support or deny a termination under subdivisions of section 232(a). Where the *intent* of the parent is involved as to abandonment, section 232(b) does not mandate a finding of intent when none is present simply to assure the best interests and welfare of the child.

■ We thus conclude section 232(a)(1) requires a finding the parents intended to abandon the child. As substantial evidence supports the court's conclusion Lora and Jeffrey did not have that intent, considerations of the child's interest and welfare do not come into play and evidence adduced before the court is not relevant to the petitions.

IV

The M's are critical of recent decisions they say expand the parental preference doctrine, abrogate the rights of adoptive children and return to outdated concepts that parents have property rights in their children. They finally contend a failure to presume detriment to a child uprooted from a secure environment denies equal protection of the law to the child.

While the contentions are interesting, they are irrelevant here, as we have already explained.

Judgments affirmed.

Weiner, Acting P. J., and Todd, J., concurred.