Filed 7/22/21  In re E.O. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| In re E.O., a Minor. | 2d Juv. No. B305954 (Super. Ct. No. 18AD-0088) (San Luis Obispo County) |
| M.M. et al., <br><br> Petitioners and Respondents, <br><br> v. <br><br> G.O., <br><br> Objector and Respondent. | |

A.M. (Mother) and M.M. (Stepfather) appeal a judgment of the family law court denying their amended petition to terminate the parental rights of G.O., the biological father of E.O. (Father).[1]

---

[1] To preserve family confidentiality and to ease the reader's task, we refer to A.M. as "Mother," G.O. as "Father," and M.M. as "Stepfather."  At times we refer to A.M. and M.M. collectively as "the M.s."

They also appeal the denial of their motion for a new trial or reconsideration.

This appeal concerns an amended petition to terminate parental rights and a petition to allow adoption by a child's stepfather. Mother and Stepfather claim that Father abandoned the child pursuant to Family Code section 7822[2] and that Father is an unfit parent pursuant to section 7825. The family law court denied the petition based in part upon findings of credibility and weight of the evidence. We affirm.

*FACTUAL AND PROCEDURAL HISTORY*

Mother and Father married in 2012 and E.O. was born the following year. Six months following E.O.'s birth, the parties separated, and Mother later filed a petition to dissolve the marriage. On April 17, 2015, the family law court entered a stipulated judgment of dissolution allowing Father visitation on Fridays through Sundays, and ordering monthly child support payments of $500. The stipulated judgment awarded the parties joint legal and physical custody.

At trial regarding the termination petition, Father testified that he was present at E.O.'s birth and thereafter actively involved as a parent. Father visited with E.O. as allowed, sometimes staying with or visiting together with E.O.'s paternal grandparents.

On June 17, 2015, Father was arrested for felony possession for sale of methamphetamine, heroin, and marijuana. He was released from custody the following day. On July 13, 2015, Father again was arrested for felony possession of illegal drugs for sale, committing a felony while on bail, and destroying

---

[2] All statutory references are to the Family Code unless otherwise stated.

evidence. He was released from custody the following day. On July 21, 2015, Mother filed a request for sole physical and legal custody of E.O. and supervised visitation to Father. The family law court later granted Mother's request; Father did not attend the hearing because he was incarcerated.

From June to August 2015, for several nights in total, Father visited with E.O. at the grandparents' home. On August 21, 2015, Father was again arrested for felony possession for sale of methamphetamine and heroin, among other charges. He then pleaded nolo contendere to four counts of possession of illegal drugs for sale, and the commission of a felony while on bail. As a result, Father was incarcerated from August 21, 2015, until July 19, 2016, for a total of 331 days. During Father's incarceration, Mother and Stepfather married.

While incarcerated, Father sent E.O. approximately a dozen letters and cards, including a birthday card and a Christmas card. At trial, Mother disputed the number of written communications, testifying there were only one or two. Father also telephoned E.O. weekly or more often with collect calls from jail. On one occasion, the M.s brought E.O. to visit Father while he was incarcerated at the Honor Farm.

Father and Mother later ceased communication during Father's incarceration when he successfully sought to temporarily suspend child support payments. Mother refused Father's telephone calls. In November 2015, Father filed a request for an order that his parents accompany E.O. to the Honor Farm for visitation. The family law court denied his request.

Father was released from incarceration on July 19, 2016, and within 24 hours, contacted Mother to arrange a visit with

3

E.O. Thereafter, Father, by his count, visited E.O. "one to three times a week," including E.O.'s birthday and Christmas. On January 20, 2017, Father was arrested again for violating the terms of his probation by a positive drug test. Father was released from custody on February 1, 2017, and contacted Mother to visit E.O. Mother advised him that "for the immediate future, they were against [him] having any visits and needed to see [him] do well for a while before they would." Thus, the last time Father visited with E.O. was in January 2017.

Father was again arrested on March 26, 2017, for sale of a controlled substance and a probation violation (missing curfew in his sober living home). He was released on May 1, 2017, following his admission to the probation violation. Mother did not allow visitation with E.O. and, for this reason, Father sought a court order permitting visitation. The parties attended mediation but could not reach an agreement. The family law court later ordered reunification therapy and telephone contact as the therapist deemed advisable. The therapy never occurred due to Father's later incarceration.

On December 13, 2017, Father was arrested again for two counts of probation violations, including a positive drug test. He was incarcerated until September 25, 2018, and then placed on parole until December 9, 2018. During his incarceration, Father testified that his telephone calls to E.O. were not answered. Father mailed several letters to E.O., but they were returned. The family law court vacated the trial date regarding visitation and reunification.

Following his September 2018 release from jail, Father began working at his former construction employment and sent child support to Mother. Several weeks prior to Father's release,

4

M.M. filed a petition to terminate his parental rights pursuant to sections 7822, subdivision (a)(3) [intent to abandon] or section 7825, subdivision (a) [parent is habitual criminal]. M.M. later filed an amended petition that included Mother as a petitioner.

Except during his incarceration periods, Father generally paid child support to Mother and provided evidentiary proof of the payments. At trial, the M.s agreed but did not recall how many payments they received. In 2018 and 2019, Mother did not negotiate the child support checks, approximately $6,000.

At trial, Father testified that his sobriety date was January 23, 2018. He also stated that he completed a court-ordered drug and alcohol program. Father acknowledged that he has made "tremendous mistakes [that have caused] a great deal of pain and inconvenience" to the M.s and E.O. Father also testified that he never intended to abandon E.O. and that he accepted and appreciated that E.O. looked upon the M.s as her mother and father.

On December 4, 2019, the family law court filed a lengthy statement of decision denying the M.s' petition. The court expressly found Father's testimony credible and his child support payments, contacts, and attempted contacts with E.O. more than "token" efforts. The court concluded that the M.s failed to prove with clear and convincing evidence that Father intended to abandon E.O. The court also considered Father's lengthy criminal history (since 2003) and concluded that the facts of Father's drug crimes do not warrant termination of his parental rights.[3] (*In re Baby Girl M.* (2006) 135 Cal.App.4th 1528, 1531

---

[3] The family law court stated that "[a]t the time of [E.O.'s] birth, [Father] had struggled for years with addiction, which

[section 7825 traditionally limited to situations where parent commits a heinous felony offense].) The court expressly found Father's testimony credible regarding his addiction recovery efforts.

*New Trial Motion*

On January 16, 2020, the M.s moved for a new trial based on several grounds, including newly discovered evidence that Father was recently arrested for felony possession of methamphetamine, cocaine, heroin, and oxycodone for sale. The new arrest occurred 17 days following the family law court's final statement of decision in which Father prevailed.

The M.s appeal and contend that the family law court erred by concluding that: 1) Father did not have the requisite intent to abandon E.O.; 2) Father's four felony convictions for illegal drug possession do not fall within the meaning or spirit of section 7825. The M.s also argue that the court abused its discretion by failing to grant a new trial or reopen the evidence to permit evidence that Father was rearrested post-trial for illegal drug possession on December 21, 2019. The M.s also point out that the judgment incorporating the statement of decision does not consider and discuss the best interests of E.O. (§§ 7800, 7801.)

DISCUSSION

*I.*

The M.s argue that sufficient evidence supports Father's intent to abandon E.O. pursuant to section 7822. In part, they rely upon the January 2017 through December 2018 period when they did not permit Father to visit E.O. The M.s point out that Father has been incarcerated for approximately 38 percent of

spawned criminal behavior, as well as multiple periods of incarceration."

6

E.O.'s young life, and assert that his sporadic contacts with her are token efforts that confuse her. They add that E.O. has a constitutional right to a stable and secure home with parents to whom she is bonded.

A reviewing court applies the substantial evidence standard of review to the trial court's findings pursuant to section 7822. (*Adoption of Allison C.* (2008) 164 Cal.Ap.4th 1004, 1010.) We resolve all evidentiary conflicts and draw all reasonable inferences in favor of the judgment. (*Id.* at pp. 1010-1011.) Witness credibility is the province of the trial court. (*Id.* at p. 1015, fn. 9.) Appellant bears the burden of establishing that the finding or order is not supported by substantial evidence. (*Id.* at p. 1011.)

Section 7822, subdivision (a)(3) permits a finding of child abandonment if a parent has left a child in the care and custody of the other parent for a period of one year without any provision for support or without communication from the parent "with the intent on the part of the parent to abandon the child." The failure to provide support or to communicate is presumptive evidence of intent to abandon. (*Id.,* subd. (b).) " ' " 'In order to constitute abandonment there must be *an actual desertion*, accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relation and throw off all obligations growing out of the same.' " ' " (*In re E.M.* (2014) 228 Cal.App.4th 828, 839.) A finding of abandonment, however, may also rest upon mere "token" efforts to support or communicate. (*Adoption of Allison C., supra*, 164 Cal.App.4th 1004, 1010.) Intent to abandon must be proven by clear and convincing evidence. (§ 7821; *In re Aubrey T.* (2020) 48 Cal.App.5th 316, 326.)

The family law court assumed, but did not decide, that Father left E.O. for the statutory one-year period. The court then decided that Father, by his frequent child support payments and communications with E.O., did not intend to abandon her. The court's decision rests upon sufficient evidence. (*In re E.M.*, *supra*, 228 Cal.App.4th 828, 839 [intent to abandon is a factual question].) The M.s have not met their burden of proof by clear and convincing evidence that Father intended to abandon E.O.

During his incarceration in 2015, Father made many collect telephone calls to E.O. from jail. He also requested and received a visit from E.O. and the M.s while confined at the Honor Farm. Within 24 hours of his July 2016 release from custody, he contacted the M.s to visit E.O. During the next six months, Father visited E.O. every week, including her birthday and Christmas. In January 2017, when Father was again arrested, the M.s decided to stop visitation until Father was rehabilitated. (*In re H.D.* (2019) 35 Cal.App.5th 42, 52-53 [custodial parent's refusal to allow visitation precludes inference other parent chose not to contact or communicate with child].) Thereafter, Father sent letters which were returned and made telephone calls that were unanswered.

Father has also made many child support payments except during times of incarceration. At the time of trial, the M.s were holding approximately $6,000 in child support checks that they did not negotiate.

In November 2015, and again in May 2017, Father filed petitions in the family law court seeking visitation with E.O. Father engaged in mediation in 2017 and agreed to reunification therapy. As the court found, Father's efforts at support and communication were "not merely 'token' efforts."

8

It is well settled that parental rights cannot be terminated absent a showing of unfitness. (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 821.) Terminating parental rights based solely on a best interest test would permit a parent's rights to be terminated based upon a "better" adoptive parent. (*Id.* at p. 846.) "Absent intent on the part of the parents to abandon the child . . . the best interests and welfare criteria are simply not applicable." (*In re Baby Boy S.* (1987) 194 Cal.App.3d 925, 933.)

## II.

The M.s assert that the family law court abused its discretion by not terminating Father's parental rights pursuant to section 7825. They point out that Father pleaded nolo contendere to possession of a dirk or dagger, among other charges, when he was arrested in August 2015 for illegal drug possession and sale. The M.s add that drug sales sometimes involve weapons and violence.

Section 7825, subdivision (a) permits a proceeding to terminate parental rights where: "(1) the child is one whose parent or parents are convicted of a felony. [¶] (2) The facts of the crime of which the parent or parents were convicted are of such a nature so as to prove the unfitness of the parent or parents to have the future custody and control of the child. In making a determination pursuant to this section, the court may consider the parent's criminal record prior to the felony conviction to the extent that the criminal record demonstrates a pattern of behavior substantially related to the welfare of the child or the parent's ability to exercise custody and control regarding the child."

"In accordance with this statutory language, and the fact that the involuntary termination of parental rights is an extreme

9

measure implicating core constitutional rights, section 7825's reach traditionally has been limited to those situations where a parent commits a heinous felony offense, often against a family member, which in and of itself demonstrates that the parent will be forever unfit to have any measure of custody of his or her children." (*In re Baby Girl M.*, *supra*, 135 Cal.App.4th 1528, 1531.) Parental unfitness must be demonstrated by the facts underlying a felony conviction. (*Id.* at p. 1539.) Permanently terminating parental rights is " 'a drastic remedy to be resorted to only in extreme cases.' " (*Id.* at p. 1535.) The trial court's decision must rest upon clear and convincing evidence and is reviewed for an abuse of discretion. (*Id.* at pp. 1535-1536.)

Here the family law court expressly considered Father's criminal history as presented in an investigative report reciting Father's misdemeanor and felony convictions since 2003. The court also considered Father's gainful employment, then-sobriety, participation in AA and NA meetings, successful random drug testing, and completion of a drug and alcohol program. Father testified that "addiction is a disease" that has "caused tremendous turmoil" in his life, and that he has decided "to fight" the disease by daily efforts. The court noted that there was no evidence that Father was under the influence of drugs while caring for E.O. or that he sold illegal drugs in her presence.

The family law court expressly found Father's testimony credible regarding his recovery efforts, and based upon "the totality of the evidence presented," it declined to terminate Father's parental rights. The M.s have not established that this decision was an abuse of the court's discretion.

10

*III.*

The M.s argue that the family law court abused its discretion by denying their motion for a new trial based upon newly discovered evidence. (Code Civ. Proc., § 657, subd. 4.) They point out that Father was arrested on illegal drug charges approximately two weeks following the final statement of decision.

The M.s filed a motion for new trial based upon numerous grounds, including newly discovered evidence, as well as a motion for reconsideration. The family law court denied the motion for new trial and the motion to reopen the evidence.

The family law court did not abuse its discretion by denying the new trial motion because the evidence was not newly discovered evidence. To be "newly discovered," the evidence must have been in existence at the time of trial. (*Aron v. WIB Holdings* (2018) 21 Cal.App.5th 1069, 1079.) "Implicit in that term is the concept that the evidence existed, but remained undiscovered at the time of trial." (*Ibid.*) Father's recent arrest occurred three months following the close of evidence at trial. Moreover, the evidence concerned an arrest, not a felony conviction as required by section 7825.

The family law court also did not abuse its discretion by declining to reconsider or reopen the taking of evidence. The court's ruling thereon stated that evidence of the most recent arrest was cumulative and would not change the court's decision, among other reasons.

11

*DISPOSITION*

The orders are affirmed.  Appellants are to bear costs.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

Tana L. Coates, Judge

Superior Court County of San Luis Obispo

_____

Hosford & Hosford, Inc. and Valerie Ryall Hosford for Petitioners and Appellants.

Barnick|Hodges Law Corporation and Whitney Northington Barnick for Objector and Respondent.