[No. H006595. Sixth Dist. Dec. 20, 1990.]

In re MARIO C. et al., Minors.
MONTEREY COUNTY DEPARTMENT OF SOCIAL SERVICES,
Petitioner and Respondent, v.
KAREN J., Objector and Appellant.

**COUNSEL**

Abby Abinanti for Objector and Appellant.

Ralph R. Kuchler and Albert H. Maldonado for Petitioner and Respondent.

**OPINION**

**ELIA, J.**—Karen J. appeals an order terminating her parental rights to her children, Mario C. and Trisha C., under Civil Code[1] section 232, subdivision (a)(7). She argues on appeal that clear and convincing evidence does

---

[1] All further code references are to the Civil Code unless otherwise noted.

not support the trial court's findings; that reasonable reunification services were not provided her; and that the trial court failed to consider appointing counsel for the minors, in compliance with Civil Code section 237.5, subdivision (a), and her children were prejudiced by this failure. Although we conclude the trial court failed to comply with section 237.5, the error does not require reversal. Since we reject appellant's additional claims of error, we will affirm the termination order.

## FACTUAL AND PROCEDURAL BACKGROUND

Mario C., was born on September 13, 1980; Trisha C. was born on October 27, 1982. They are the youngest of appellant's five children, all of whom have been or currently are dependents of the Monterey County Juvenile Court. Appellant's daughter Tabatha A. was ultimately freed for adoption in 1977; her daughter Michelle A.'s dependency was terminated when, at the age of 14, she married and had a child; James A. is in long-term foster care.

James, Mario and Trisha were taken into protective custody on March 17, 1988, after they had been left outside their home without adult supervision for several hours. They were made dependents of the juvenile court on May 3, 1988. Appellant signed a one-page reunification service agreement but refused to sign the longer one which had been prepared for her. She also refused referrals to the Family Resource Center and County Mental Health. The primary tasks of the full reunification service agreement were to begin drug counseling and to continue in therapy. Appellant ultimately signed this agreement on October 15, 1988.

A six-month review hearing was conducted on November 1, 1988.

A 12-month review and permanency planning hearing was conducted on May 2, 1989. As a result of this hearing, the case was referred for the initiation of proceedings to terminate appellant's and the children's father's parental rights under section 232.

A petition was filed under section 232, subdivision (a)(7) on July 18, 1989. A contested hearing on the petition was conducted on November 7, 1989. On November 21, the court filed an order terminating appellant's parental rights. This appeal ensued.

### I. *Clear and Convincing Evidence*

 Appellant first argues that clear and convincing evidence does not support the court's finding that it would be detrimental to return the chil-

dren to her custody. The gravamen of her argument, however, is that she was not the source of the detriment suffered by Mario and Trisha.

Appellant misapprehends the burden on petitioner. ■ It must establish by clear and convincing evidence (*In re Angelia P.* (1981) 28 Cal.3d 908, 924 [171 Cal.Rptr. 637, 623 P.2d 198]), inter alia, that it would be detrimental to return the children to their parents' custody. ■ The evidence in support of the trial court's determination on this issue included both reports and testimony by the various social workers which chronicled the department's involvement with appellant as far back as 1971; the extensive referrals for neglect and abuse of her children over the preceding 17-year-period, a 10-year-old psychological evaluation which diagnosed appellant's problems as a lack of mental and psychological maturity, and the many failed attempts to have appellant become involved in counseling.

The section 233 report also chronicled the significant emotional and behavioral disturbances of Trisha and Mario, and reported that they had been the victims of physical, sexual, and emotional abuse at the hands of appellant and her boyfriends. The report concluded, based on psychologist Dr. Thomas Reidy's evaluations of the children's problems and needs and appellant's inadequate parenting skills, that it would be detrimental to return the children to appellant's custody. Dr. Reidy testified that Mario, then 8, was suffering from oppositional behavior disorder, and that he had diagnosed Trisha as having an overanxious disorder of childhood. The prognosis for both children was guarded. He also testified that it would be detrimental to Trisha to have ongoing contact with her mother, because Trisha's own emotional disturbance was severe and appellant had no insight into her children's problems. He had diagnosed appellant as suffering from a mixed personality disorder with antisocial and dependency traits, and as having a history of poly-drug abuse and dependency.

We have no difficulty concluding, on this record, that clear and convincing evidence supports the trial court's determination that it would have been detrimental to return Mario and Trisha to appellant's custody.

## II. *Reunification Services*

Section 232, subdivision (a)(7) requires, inter alia, that a court determine that "reasonable services have been provided or offered to the parents which were designed to aid the parents to overcome the problems which led to the deprivation or continued loss of custody . . . ." This is consistent with the federal requirement, enunciated in 42 United States Code section 671 (a)(15). ■ A reunification service plan should be well defined, specific, and tailored to provide services that will lead to the resumption of a family

relationship. (See *In re Victoria M.* (1989) 207 Cal.App.3d 1317, 1326-1330 [255 Cal.Rptr. 498]; *In re John B.* (1984) 159 Cal.App.3d 268, 275 [205 Cal.Rptr. 321]; *In re Jamie M.* (1982) 134 Cal.App.3d 530. 545 [184 Cal.Rptr. 778]; *In re Bernadette C.* (1982) 127 Cal.App.3d 618, 626 [179 Cal.Rptr. 688].) Reunification services are voluntary, however, and an unwilling or indifferent parent cannot be forced to comply with them. (*In re Jonathan R.* (1989) 211 Cal.App.3d 1214, 1220 [259 Cal.Rptr. 863]; *In re Lynna B.* (1979) 92 Cal.App.3d 682, 702 [155 Cal.Rptr. 256].)

■ Appellant contends that the majority of the provisions in the service agreement were not designed to remedy her barriers to parenting, and that this service plan was similar to others which had been unsuccessful in reuniting her with her other children. She argues that, like the mother in *Victoria M., supra,* she was provided no assistance related to the problems which led to her children's dependency.

We have reviewed the entire record, and find appellant's argument unavailing. The record reveals that she has been offered or received a veritable plethora of services since 1971, including instruction in homemaking, parent education, individual and family counseling, psychological and psychiatric counseling, drug and alcohol counseling, and housing referral and counseling. The reunification service agreement designed to overcome the problems which led to Mario and Trisha's dependency included the obligation to visit regularly with the children, to receive an alcohol/drug evaluation and referral for treatment, to attend counseling on a weekly basis, to maintain clean housing, and to abstain from criminal activity. Appellant was also counseled regarding job training and employment and was offered transportion to various appointments. Dr. Reidy testified that in his opinion, the service agreement was adequate.

Appellant failed to make any significant progress toward reunification, however. She was jailed for prostitution during the course of the children's dependency; admitted to using cocaine for six months after they were placed in protective custody; refused referrals to counseling and saw a counselor only for a few months between March 1988 and November 1989. She failed to follow through on a drug evaluation referral. Her housing was inadequate. She visited Mario and Trisha only twice between March and August 1988. She then saw them on a biweekly basis until Christmas, when she injured Trisha on a visit and visitation was suspended. She was uncooperative in her psychological evaluation, and, according to Dr. Reidy, "felt she could handle her own problems, and really didn't need [therapy]."

Appellant has two additional specific complaints about the reunification process. The first is that as a precondition to visitation and counseling, her

social worker required her to take the drug Elavil. The social worker testified appellant had told her early in the reunification process that her psychiatrist, Dr. Buche, had prescribed Elavil for her. The social worker, without medical or court authority, made appellant's use of this drug a precondition to visits with the children because her behavior had been reported as aggressive by other social workers. The social worker admitted that this precondition was partly the reason for the infrequency of appellant's visits with the children between April and August 1988. The Family Resource Center, to which the social worker had referred appellant for counseling, had also refused to counsel appellant until she was taking Elavil. Second, appellant points to the fact that in August 1988, only a few months into the reunification process, and well before the department's normal time line, her social worker had discussions with an adoption worker. There is no evidence, however, that reunification efforts were suspended, or that permanency planning was improperly expedited as a result of these discussions.

While we do not condone the social worker's conditioning visitation on appellant's taking Elavil without a court order supported by competent evidence that visitation would be detrimental without it, we are not persuaded that either this requirement or the August 1988 discussions had a significant negative effect on appellant's ability to reunify with her children. We are satisfied that the reunification service plan was a good faith effort on behalf of respondent. (Cf. *In re John B.*, *supra*, 159 Cal.App.3d at p. 275.) We conclude, in sum, that the record discloses substantial evidence that reasonable services, designed to aid appellant in overcoming the problems which led to the loss of custody, were provided or offered her. (*In re Robert J.* (1982) 129 Cal.App.3d 894, 901 [181 Cal.Rptr 188]; § 232, subd. (a)(7).)

### III. *Appointment of Counsel for the Minors*

Section 237.5, subdivision (a)[2] mandates that at the commencement of a termination hearing, a court consider whether the interests of the minors require appointment of counsel. ■ Appellant contends that the trial court failed to consider whether Mario and Trisha's interests required counsel be appointed to represent them, and that this failure requires reversal.

Neither in the minute orders nor in the reporter's transcript is there any indication that the court considered appointing separate counsel to repre-

[2]Section 237.5 provides as follows: "At the beginning of the proceeding on a petition filed pursuant to this chapter counsel shall be appointed as follows: (a) The court shall consider whether the interests of the minor require the appointment of counsel. If the court finds that the interests of the minor do require such protection, the court shall appoint counsel to represent the minor. If the court finds that the interests of the minor require the representation of counsel, counsel shall be appointed whether or not the minor is able to afford counsel. The minor shall not be present in court unless the minor so requests or the court so orders."

sent Mario and Trisha at any time before or during the termination hearing. We must therefore consider whether this failure was error.

We disagree with the view expressed by other courts that section 237.5 "permits but does not mandate" considering whether to appoint independent counsel to represent a minor's interests during the hearing. (See, e.g., *In re Rico W.* (1986) 179 Cal.App.3d 1169, 1178 [225 Cal.Rptr. 472]; *In re Patricia E.* (1985) 174 Cal.App.3d 1, 7 [219 Cal.Rptr. 783].) That statement is applicable only to former section 237.5, which provided that a court *may* appoint counsel to represent a minor in a section 232 proceeding. Even this discretion was limited by our Supreme Court in *In re Richard E.* (1978) 21 Cal.3d 349 [146 Cal.Rptr. 604, 579 P.2d 495]. In that case, the court held that a trial court "must exercise its discretion" to appoint counsel for a minor at the commencement of the proceedings absent an immediate showing that counsel is not required to protect the child's interests. (*Id.* at p. 354; see also *Adoption of Michael D.* (1989) 209 Cal.App.3d 122, 135 [256 Cal.Rptr. 884].)

Section 237.5 was amended in 1981, however. It now expressly requires courts to consider the need for counsel; if there is such a need, the court must appoint independent counsel to represent the child. The only discretion the court retains is to determine whether the child's interests would be best served by such an appointment. In light of the absence of any record evidence that the trial court considered whether separate counsel should be apppointed to represent Mario and Trisha, we conclude it failed to comply with section 237.5.

A court's failure to make this determination does not automatically result in reversal, however. In *Richard E.*, although the record disclosed no evidence that the trial court had considered the need for independent counsel for the minor, the court held that the error was not reversible absent a showing of prejudice. Nothing in the language of present section 237.5 makes a violation of its terms reversible per se. We therefore conclude the *Richard E.* prejudice test should also be applied to violations of the present statute. Accordingly, we must determine whether the trial court's failure to consider appointing counsel for Mario and Trisha adversely affected their rights and interests to the extent that a miscarriage of justice occurred. (*In re Richard E., supra,* 21 Cal.3d at p. 354; *Adoption of Michael D., supra,* 209 Cal.App.3d at p. 135; *In re Melicia L.* (1988) 207 Cal.App.3d 51, 54 [254 Cal.Rptr. 541]; *In re Brittany H.* (1988) 198 Cal.App.3d 533, 555 [243 Cal.Rptr. 763].)

We are not unsympathetic to appellant's suggestion that counsel for the petitioner in a termination hearing may not be in the best position to

represent the interests of a child to the court. Petitioner is constrained by a statutory scheme which mandates, at most, 18 months of reunification services. (Welf. & Inst. Code, § 366.25, subd. (a).) If reunification fails within this time frame it is petitioner's responsibility to implement a permanent plan. And if, as here, the children are adoptable, absent certain exceptions, adoption is the statutorily preferred permanent plan.

Such a plan presupposes that it is generally in the best interests of children who cannot be reunified with their parents to move on to another permanent home. Whether such a course is in a particular child's best interests, however, is a matter which may be the subject of dispute in individual proceedings. We share appellant's concern with any assumption that petitioner is necessarily in the best position to make that determination.

Section 237.5 recognizes the possibility of a conflict between the interests of petitioner and those of the children, however, and allows the court to appoint independent counsel in the presence of such a conflict. Under the statute, a court is required to conduct some form of inquiry at the commencement of the hearing to determine the presence or absence of a conflict. The difficulty is that evidence on this issue may not be manifest at that time. If this is the case, a pretrial hearing would afford the court an opportunity to consider and determine whether a minor's needs required the appointment of counsel.

This is not a case, like *In re Melicia L.*, *supra*, 207 Cal.App.3d at pages 54-55, however, where the only child of several dependent siblings who had not been sexually abused was freed for adoption, and where no consideration was given to whether the child's developmental delays would have been better treated through the preservation of family ties. Psychological evaluations had been performed on both Mario and Trisha by Dr. Reidy, and both children had been interviewed by the social worker who prepared the section 233 report about their understanding of the termination proceedings, and whether they wanted to have any further contact with their mother. Both were also involved in ongoing therapy.

Appellant contends, however, that allegations of abuse levelled against one of Trisha's foster families indicated respondent's failure to protect the children while in its care. She suggests this created a conflict of interest which made it inappropriate for respondent to represent the children. We disagree. While we abhor the fact that Trisha, who had already suffered so much, may have been the victim of sexual abuse while in foster care, we do not think this fact automatically disqualifies respondent from adequately representing the children's interests in the termination proceeding. There was no indication here that either Trisha or Mario had any interest in

having the termination petition denied; both children understood that adoption meant "you never go back to live with your real mom and dad, you go live with another family forever" and both said it would be "ok" not to live with their real mom again.

We are satisfied on this record that respondent adequately represented the best interests of the children in this proceeding. We therefore conclude that appellant has failed to demonstrate that Mario and Trisha were prejudiced by the trial court's failure to comply with section 237.5, and that the order terminating appellant's parental rights should be affirmed.

The trial court's order is affirmed.

Capaccioli, Acting P. J., and Bamattre-Manoukian, J., concurred.

A petition for a rehearing was denied January 10, 1991, and appellant's petition for review by the Supreme Court was denied March 21, 1991.