Filed 8/13/14  In re E.M. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re E.M. et al., Persons Coming Under the Juvenile Court Law. | |
| RANDALL M., | F068527 |
| Petitioner and Respondent, | (Super. Ct. No. 13A0028) |
| v. | **OPINION** |
| JOSE M., | |
| Objector and Appellant. | |

## THE COURT[1]

APPEAL from an order of the Superior Court of Tulare County.  James T. LaPorte, Judge.

Marsha F. Levine, under appointment by the Court of Appeal, for Objector and Appellant.

Randall M., in pro. per., for Petitioner and Respondent.

-ooOoo-

---

**1**    Before Hill, P. J., Gomes, J., and Chittick, J.[†]

†    Judge of the Fresno Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Jose M. (father)[2] appeals from a judgment granting a petition, under Family Code, section 7822[3], declaring his daughter, E.M., and son, E.P., (collectively, the children), free from his parental custody and control. Father contends (1) the trial court erred in failing to consider whether independent counsel should be appointed for the children and (2) insufficient evidence supports the trial court's finding he intended to abandon the children. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On June 21, 2013, Randall M. (stepfather) filed a petition to declare the children free from father's custody and control and to terminate his parental rights in conjunction with a stepparent adoption. The petition alleged that the children had not seen or heard from father since November 2008, and father had not provided any support for the children.

Denise M. (mother) provided a declaration in support of the petition. According to mother's declaration, she began an intimate relationship with father in the spring of 2004, when she was 17 years old and father was 32 years old. E.M. was born in April 2006. E.P. was born in November 2007. Father started physically abusing mother in December 2007. After two incidents of physical abuse in July 2008, mother called the police and stopped living with father.

In October 2008, mother allowed father to visit the children in the yard outside her residence. After father demanded to know who mother was talking to on the phone and refused to leave, mother called the police and had father removed from her property. The following day, father left 20 messages on mother's answer machine within a two-hour period.

---

[2]    In this opinion, certain persons are identified by initials and/or by status in accordance with our Supreme Court's policy regarding protective nondisclosure. No disrespect is intended.

[3]    Further statutory references are to the Family Code unless otherwise specified.

In November 2008, mother obtained a restraining order against father. Father was granted supervised visits with the children, as well as phone visits. The last time father saw the children was during a supervised visit before he was arrested in December 2008, for violating the restraining order. Following an investigation, the district attorney's office charged father with felony stalking with special circumstances. Father received a three-year prison term. Father was released on parole a number of times but then sent back due to parole violations. His expected release date from prison was August 9, 2013.

Mother's relationship with stepfather began in December 2010. Since that time, stepfather had helped support the children. The children believed stepfather was their father and called him "daddy." Stepfather thought of the children as his own and was a loving father. He was involved in all of their school functions, doctor's appointments, and mental health treatment. Mother and stepfather were recently married and had a baby in January 2013. Mother felt it was in the children's best interests for stepfather to adopt them.

On October 4, 2013, the Kings County civil investigator filed a report on the matter. The investigator stated that he had duly informed the children about the petition and court proceedings to end father's parental rights. E.M., who was in second grade, did not remember having a father other than stepfather. Similarly, E.P., who was in kindergarten, did not know any person who might be his father other than stepfather. Both children referred to stepfather as "daddy" and were comfortable living in their current environment. Neither child wanted to attend the court proceedings.

Stepfather reported that father had not been involved in the children's lives but had been in and out of incarceration. Nor had father supported the children for the last five years. Stepfather had been acting as the children's parent for the past three years and the children were doing well. The investigator observed that the children considered stepfather to be their father and there was genuine affection between them.

3

The investigator concluded by recommending that the trial court grant stepfather's petition. The investigator explained:

> "While [father] has been incarcerated multiple times, there has been no contact between [father] and the [children] for the majority of the children's lives. The children indicated that they did not know who [father] is and cannot remember him. [Stepfather] is willing to ensure that the physical, educational and emotional needs of the children … are a priority and that these needs will be met. It would seem that the best interest of the [children] would be to allow a relationship that already exists to become legally binding. The children have an adult father figure who has been in their life consistently, has provided for the children and is willing to continue to do so for the foreseeable future."

On October 7, 2013, father filed a declaration opposing the petition to terminate his parental rights. Father stated he had always wanted to be part of his children's lives. In October 2010, father "began parenting classes as a step towards being truly prepared for the responsibility of interacting with my children." Father had also completed anger management and domestic violence classes and was currently receiving counseling. Father found it was best to let go of his past relationship with mother but not his relationship with the children.

A contested termination hearing was held on November 8, 2013. During the hearing, father testified he had never paid child support (due to unemployment resulting from physical and mental disabilities) and the last time he saw the children was on December 23, 2008. When asked why he had not seen the children since then, father testified: "I have filed continuously to see the children, but through mutual differences or differences from [mother] and myself I have—when I filed to see the kids I was sent back to prison or I was re-arraigned on a new case."

Father testified he filed twice for visitation—once in August 2011 and once in April 2012—but each time he was sent back to prison. When he was in prison, father tried to get visitation but "ran into litigation problems." Father explained: "The visitation and modification … papers…I was never able to get them out through the

4

prison system so I just waited until I got out." Father never tried to write to the children or send them birthday or Christmas presents because he thought it might violate the protective orders against him and get him in legal trouble.

Father wanted to reestablish a relationship with the children because he never had a father growing up and he did not want his children questioning why he was not present in their lives. He wanted also to support them emotionally, mentally, and, eventually, physically. Father was now "a totally different person" because of the classes he had completed on parenting, domestic violence, and anger management. Father tried to do everything he could to be a better person for the children.

Father testified his "intentions" were to wait until April 20, 2014, to file for visitation with the children. Father explained: "I do not wish to disturb [mother] or upset her, I just wish for us to reach the end in the best manner possible, and then when it came time for the termination of the original stay-away order then I was going to file for visitation one more time and see what we can reach in a mutual understanding."

After listening to the argument of counsel, the trial court granted stepfather's petition to terminate father's parental rights, explaining:

> "…The Court concludes that [father] has pursuant to Family Code Section 7822[, subdivision] (a)(3) left the children in the care and custody of the other parent for a period of more than one year without any provision for the children's support or without communication with [intent] to abandon for the statutory period. Although [father] may have never intended to permanently abandon the children, he did by his own actions .…

> "Abandon them by no communication and nonsupport for the statutory periods. The Appellate Court in *Adoption of Allison C.* [(2008)]164 Cal.App.4th 1004 [(*Allison C.*)] held that the father's action there of incarceration for domestic violence, burglary, and driving under the influence were voluntary and that court citing the case of [*In re Rose G.* (1976)] 57 Cal.App.3d 406 held that being incarcerated does not in and of itself provide a legal defense to abandonment of the children.

5

"The Court holds that [father]'s own actions resulting from his incarceration are not an excuse from providing support nor communicating with his children for the statutory period. [E.M.] is now seven years old and [E.P.] is six years old …. And the child's need for a permanent and stable home, which is now provided by the stepfather …, according to the civil investigation report cannot be postponed for an indefinite period awaiting for [father]'s rehabilitation of himself. The civil investigation report notes that the children have had no contact with [father] for the majority of their lives, they don't know who he is, and cannot remember him in any way. As the civil investigator noted in this report, [stepfather] is willing to ensure that the physical, educational, and emotional needs of [E.M.] and [E.P.] are priority and that these needs will be met.

"It would seem that the best interest of the minors would be to allow a relationship that already exists become legally binding. The children have an adult father figure who has been in their life … consistently, has provided for the children, and is willing to continue to do so for the foreseeable future. For all these reasons the Court would grant the request in this particular circumstance to free the two children, [E.M.], age seven, and [E.P.], now age six, from the … care, custody, and control of [father]."

On December 5, 2013, the trial court filed a judgment declaring the children free from father's parental custody and control. This timely appeal followed.

### DISCUSSION

### I.      Failure to Consider Appointment of Counsel for the Children

Section 7861 requires the trial court to "consider whether the interests of the child require the appointment of counsel." While the court has discretion in deciding whether to appoint counsel for the minor, the court "'*must* exercise its discretion.'" (*Adoption of Jacob C.* (1994) 25 Cal.App.4th 617, 625, italics added.) If the record does not demonstrate that the court exercised its discretion, error has occurred. (*In re Richard E.* (1978) 21 Cal.3d 349, 354 (*Richard E.*).)

The record does not indicate that the trial court ever considered the question of whether counsel should be appointed for the children. Therefore, the court erred in failing to exercise its discretion.

6

Reversal is not required, however, because the error did not result in a miscarriage of justice. (*Richard E.*, *supra*, 21 Cal.3d at p. 355.) As in the *Richard E.* case, father was afforded a full opportunity to demonstrate that terminating the parental relationship would not further the best interests of the children, just as stepfather was afforded an opportunity to show that freeing them from father's parental control was in the best interests of the children. Father suggests nothing which independent counsel for the children might have done to better protect the children's interests when both father and stepfather participated in the proceedings and the petition was contested.

As father acknowledges, the civil investigator observed the children were unable to remember father and were happy living with stepfather whom they regarded as their father. Father suggests that independent counsel could have better protected the children's interests by making an "effort to help them remember father" or by informing them of "the details surrounding father's absence from their lives," which he claims the children had the right to know. We are not persuaded this would have been the proper role of counsel, let alone in the children's best interests.

We likewise reject father's assertion that appointment of independent counsel was necessary to protect the children's interests because no one else involved in the proceedings, including the civil investigator, was acting *solely* to protect the children's interests. The statutory mandate of the civil investigator was to investigate the children's circumstances and "render to the court a written report of the investigation with a recommendation of the proper disposition to be made in the proceeding *in the best interest of the child.*" (§§ 7851, subd. (a), italics added, 7850.)

We conclude any error in failing to appoint or to consider appointing independent counsel for the children was not prejudicial and did not result in a miscarriage of justice. (*Richard E.*, *supra*, 21 Cal.3d at pp. 355-356.)

7

## II.    *Sufficiency of the Evidence of Intent to Abandon*

Under section 7822, a court may terminate parental rights of a natural parent when it finds, by clear and convincing evidence, one parent "has left the child in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication from the parent, with the intent on the part of the parent to abandon the child."  (§ 7822, subd. (a)(3).)  The court considers the frequency of the parent-child communications, the genuineness of the effort and the quality of the communications that occurred.  (*People v. Ryan* (1999) 76 Cal.App.4th 1304, 1316.)

The court may presume an intent to abandon the child where the evidence shows the absent parent has failed to provide support to the child or failed to communicate with the child for the one-year period.  Token efforts to support or communicate do not suffice.  (§ 7822, subd. (b).)

We apply a substantial evidence standard of review to the trial court's findings.  The standard of review places a heavy burden on father.  We need not accept his testimony at face value.  Instead, we resolve all evidentiary conflicts in favor of the trial court's conclusions regarding abandonment and intent.  We will not disturb a decree adjudging that a minor is an abandoned child if the evidence is legally sufficient to support the findings of fact.  We do not decide questions of witness credibility, nor do we resolve evidentiary conflicts.  (*Allison C.*, *supra*, 164 Cal.App.4th at pp. 1010-1011; see *In Re Noreen G.* (2010) 181 Cal.App.4th 1359, 1382.)

Father's own testimony shows he last saw the children in December 2008, when E.M. was 2 years old and E.P. was 1 years old.  By the time of the termination hearing, E.M. was 7 years old and E.P. was 6 years old.  Father's failure to provide support and to communicate with the children for five years constitutes presumptive evidence of intent to abandon under section 7822, subdivision (b).

While acknowledging he provided no support and last saw the children in December 2008, father asserts there was insufficient evidence he intended to abandon the

8

children because he made "efforts" to visit the children over the years. Father asserts he twice filed for a visitation order but "circumstances" occurred which "resulted in father again being incarcerated, thereby obviating his efforts to obtain orders at those times." Father claims he continued to try to obtain a visitation order when he was in prison but was "thwarted from transmitting the necessary documents to the court."

Father's argument resembles claims rejected in *Allison C.*, *supra*, 164 Cal.App.4th 1004, which the trial court cited in correctly rejecting father's argument below. In *Allison C.*, the father left his daughter with her mother after he was incarcerated; the father provided only token support for his daughter for more than three years; the father failed to communicate with her for the same period; and the father argued communication was restricted first by his incarceration, then by the mother's restraining order, and later by the terms of his parole. The Court of Appeal held the trial court's finding the father failed to communicate for more than three years, "coupled with its finding of nonsupport for the same period, are sufficient to show father intended to abandon her for that period." (*Id.* at p. 1013.)

As the trial court observed, the circumstances father claims limited his efforts to communicate with the children were a consequence of his own voluntary actions. (*Allison C.*, *supra*, 164 Cal.App.4th at p. 1012 ["His actions underlying his incarcerations for domestic violence, burglary, and driving under the influence were voluntary, and in any case, 'being incarcerated does not, in and of itself, provide a legal defense to abandonment of children.' [Citation.]"].) Despite father's "emphatic" statements that he wished to "reestablish" a relationship with the children, the court could reasonably find father did not overcome the presumption he intended to abandon the children for the statutory period. (*In re B. J. B.* (1986) 185 Cal.App.3d 1201, 1212 [intent to abandon must be based on objective measure of conduct, not parent's stated wish].) Moreover, while it is commendable father took classes in parenting, domestic violence, and anger management, childhood is brief and a child's need for a permanent home cannot wait for

9

a parent to rehabilitate himself or herself.  (*Allison C.*, *supra*, 164 Cal.App.4th at p. 1016.)  Substantial evidence supports the court's finding of abandonment under section 7822.

## *DISPOSITION*

The judgment is affirmed.